A04A1120. ADCOCK v. THE STATE.
(603 SE2d 340)

MIKELL, Judge.

James David Adcock, David G. Kates, and Robert William Keller were indicted jointly for burglary (two counts), aggravated assault, kidnapping, false imprisonment (two counts), and armed robbery. In their respective trials, Kates was convicted on all counts, and Adcock was convicted of one count of burglary and two counts of false

---

[5] See, e.g., *Gould v. State*, 168 Ga. App. 605, 608 (3) (309 SE2d 888) (1983).
[6] *Jackson v. Virginia*, supra.

imprisonment.[1] We affirmed Kates's convictions,[2] and in this appeal, we affirm Adcock's convictions as well.

On appeal from a criminal conviction, we view the evidence in the light most favorable to the jury's verdict, and the defendant no longer enjoys the presumption of innocence.[3] We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offenses beyond a reasonable doubt.[4]

So viewed, the evidence adduced at trial shows that on September 5, 2001, Adcock, Keller, and Alfred "J. R." Gossett were involved in a drug deal that went awry. Adcock was the middleman who set up the deal. According to a statement he gave to Gwinnett County Police Detective Eric Osterberg, Adcock stayed in the car while Keller and J. R. went into an apartment building to buy $1,200 worth of marijuana. Keller emerged, stating that he had been robbed. It was implied that J. R. fled with the drug money, which Keller owed Kates.

Adcock testified that he drove with Keller to explain to Kates why Keller did not have the money. According to Adcock's statement, Keller entered Kates's vehicle, and the men argued. Kates motioned for Adcock to join them, and reluctantly, he got into the car. Adcock gave Kates directions to J. R.'s apartment, and Adcock knocked on the door.

J. R.'s mother, Loretta Walker, answered the door. Mrs. Walker testified that she heard the knock between 10:00 p.m. and 10:30 p.m., while she and her husband, George H. Walker, were upstairs in bed. Mrs. Walker thought that J. R. had forgotten his key, so she went to answer the door. Mrs. Walker looked through the peephole and saw Adcock, whom she knew as a friend of her son. Because Adcock had been to her home before, Mrs. Walker opened the door. She saw two other men, later identified as Kates and Keller, standing off to the side. Kates grabbed Mrs. Walker by the chest, pushed her into the living room, pointed a gun at her head, and demanded to know where J. R. was. She said she did not know. Kates asked who else was home, and Mrs. Walker told him that her husband was upstairs. Still holding the gun to her head, Kates forced her to walk upstairs to the bedroom. He demanded money. Meanwhile, Adcock stood against the dresser and said their son had "messed up. This is the second time that he messed up and we want our money back." Mr. Walker testified that Adcock said that "J. R. had done this to him before and he was not

---

[1] The record does not reflect the status of the charges against Keller.

[2] *Kates v. State*, 269 Ga. App. 8 (603 SE2d 342) (2004).

[3] *Bates v. State*, 259 Ga. App. 232, 233 (1) (576 SE2d 619) (2003).

[4] Id., citing *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

going to get away with it again." Adcock and Keller tied the Walkers up with telephone cord and blindfolded them while Kates went to search J. R.'s room for money. When he returned, Kates threatened to kill them and demanded money. Mr. Walker said he had a small amount in his wallet, and Kates took it. Kates told the Walkers that he would have them killed if they called the police, so they did not report the incident right away. However, the next day, Kates called and threatened to return that night if the Walkers did not have the money J. R. owed him. Mr. Walker then called the police.

The Walkers testified that Adcock never seemed afraid or intimidated. However, Mrs. Walker also testified that Adcock told Kates not to hurt the Walkers because they were good people.

1. Adcock first contends that a fatal variance exists between the allegata and the probata as to the burglary conviction. We disagree.

A person commits burglary under OCGA § 16-7-1 (a) "when, without authority and with the intent to commit a felony or theft therein, he enters or remains within the dwelling house of another." The indictment charged Adcock with unlawful entry but not with remaining in the Walkers' home. Adcock contends that the evidence does not support a finding that he entered the premises without authority because Mrs. Walker testified that she opened the door when she saw him through the peephole. Adcock's argument is flawed. The testimony shows that, although Mrs. Walker opened the door, she did not invite Adcock inside. Rather, she testified that Kates "rushed me, grabbed me by my chest and asked me where my son was, pushed me back in the living room." Moreover, Adcock told Detective Osterberg that when Mrs. Walker opened the door, Kates immediately drew his gun, placed it to her throat, and "they all rushed into the . . . apartment." The jury was authorized to conclude from this evidence that Adcock entered the dwelling house of another without authority as charged in the indictment. There was no variance between the allegata and the probata.[5]

2. "A person commits the offense of false imprisonment when, in violation of the personal liberty of another, he arrests, confines, or detains such person without legal authority."[6] In his second enumeration of error, Adcock challenges the sufficiency of the evidence to support his conviction of two counts of false imprisonment. He claims that the record shows that he was "a reluctant participant acting out of fear." Again, we disagree.

---

[5] See generally *Maddox v. State*, 236 Ga. App. 209, 210 (511 SE2d 294) (1999).
[6] OCGA § 16-5-41 (a).

Under Georgia law, participants in a crime may be charged with and convicted of the commission of the crime. OCGA § 16-2-20. While an individual's mere presence when a crime is committed is not sufficient to warrant conviction, if the individual is present and assists in the commission of the crime, the individual may be convicted as a party thereto. Moreover, the jury is authorized to infer the individual's criminal intent from conduct before, during, and after the commission of the crime.[7]

In the case at bar, the evidence demonstrates that Adcock took an active role in confining and/or detaining the Walkers. The Walkers testified that Adcock positioned himself at the foot of their bed and participated in tying them up. They also testified that he never seemed afraid or intimidated. This evidence authorized the jury to conclude beyond a reasonable doubt that Adcock was guilty as a party to the crime.[8]

*Judgment affirmed. Blackburn, P. J., and Barnes, J., concur.*

DECIDED AUGUST 6, 2004.

*Wystan B. Getz*, for appellant.
*Daniel J. Porter, District Attorney, Gregory D. McKeithen, Assistant District Attorney*, for appellee.

---

[7] (Citations omitted.) *Hicks v. State*, 211 Ga. App. 370, 372 (1) (439 SE2d 56) (1993). See also *Brown v. State*, 225 Ga. App. 201, 202 (1) (483 SE2d 641) (1997).
[8] *Jackson v. Virginia*, supra.