**SECOND DIVISION**
**BARNES, P. J.,**
**ADAMS and MCFADDEN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**October 2, 2012**

# In the Court of Appeals of Georgia

A12A1344. THE STATE v. CRAPP.                                    MC-051C

MCFADDEN, Judge.

A jury convicted Frederick Crapp of the armed robbery and kidnapping of Tyhesha Strawder, and entering her automobile with the intent to commit kidnapping. The trial court granted Crapp's motion for new trial, finding that Crapp had been denied the effective assistance of counsel because defense counsel did not corroborate Crapp's defense with evidence that he possessed. The state appeals, arguing that Crapp did receive the effective assistance of counsel. The trial court did not err in concluding that counsel's performance was deficient and likely affected the outcome of the trial. We therefore affirm.

1.    *Requirement of an enumeration of error.*

As a threshold matter we must address Crapp's argument that the state "has provided this Court with no enumeration of error upon which it may reverse the Superior Court's order." Crapp correctly notes that there is no section of the Brief of Appellant entitled "Enumeration of Error."

In order for a Georgia appellate court to review a trial court ruling for legal error,

> a party must set forth in the enumeration of errors the allegedly erroneous ruling. The appellate court is precluded from reviewing the propriety of a lower court's ruling if the ruling is not contained in the enumeration of errors. *Lee v. State*, 265 Ga. 112[, 116 (7)] (454 SE2d 761) (1995); *Irvin v. Askew*, 241 Ga. 565[, 566 (2)] (246 SE2d 682) (1978).

(Punctuation omitted.) *Felix v. State*, 271 Ga. 534, 539 (523 SE2d 1) (1999).

The Brief of Appellant does contain a section entitled, "Question Presented." The body of that section provides, "Was Appellee denied his right to effective assistance of counsel?"

Strictly speaking, that is not an enumeration of error. "An error of law has as its basis a specific ruling made by the trial court. In order for a Georgia appellate court to review a trial court ruling for legal error, a party must set forth in the

enumeration of errors the allegedly erroneous ruling." (Citation omitted.) *Felix*, supra, 271 Ga. at 539. The state's "Question Presented" does not identify an allegedly erroneous ruling; it identifies an underlying legal issue. Cf. Fed. R. App. Pro. 28 (a) (5) (requiring that an appellant's brief contain "a statement of the issues presented for review").

But as to the sufficiency of enumerations of error, our Supreme Court has reminded us,

> The General Assembly has made it clear that all points raised in an appeal are to be considered by the appellate court. In addition to the statutory mandate that the [Appellate Practice Act] be "liberally construed so as to bring about a decision on the merits of every case appealed and to avoid . . . refusal to consider any points raised therein" (OCGA § 5-6-30), the legislature, in enacting OCGA § 5-6-48 (f), has imposed on the appellate courts a statutory duty to discern what errors an appellant is attempting to articulate. "[If] the enumeration of errors fails to enumerate clearly the errors sought to be reviewed[,]" the appellate court is nonetheless required to consider the appeal "where it is apparent from the notice of appeal, the record, the enumeration of errors, or any combination of the foregoing, . . . what errors are sought to be asserted upon appeal. . . ." OCGA § 5-6-48 (f).

*Felix*, supra, 271 Ga. at 538. It is readily apparent here that the state seeks to assert a single error: the trial court's grant of Crapp's motion for new trial. We therefore proceed to the merits.

2. *Ineffective assistance of counsel*.

"A claim of ineffective assistance of counsel is a mixed question of law and fact. The proper standard of review requires that we accept the [trial] court's factual findings unless clearly erroneous, but we independently apply the legal principles to the facts." (Citations omitted.) *Head v. Carr*, 273 Ga. at 616 (4). Viewed with these principles in mind, the evidence showed that very early the morning of February 16, 2007, a robber with what appeared to be a gun in his pocket robbed Tyhesha Strawder of $80 or $90 outside of her home as she was returning from work. The robber entered Strawder's car and directed her to another location, where the robber took her cell phone and keys, got out, and went up to a house. Five or ten minutes later, the robber returned and directed Strawder to drive to an alley across from Strawder's house, where he exited the car.

After the robber got out of her car, Strawder drove to a restaurant managed by an acquaintance. The acquaintance called the police. An officer arrived and drove

Strawder around, trying to find the house where she had driven the robber. Strawder could not locate the house. She gave the officer a statement.

The next morning, Strawder and her mother retraced Strawder's movements and were able to locate the house to which Strawder had driven the robber. At that house they encountered Lorenzo Simpson. Simpson identified Crapp as the individual who had come to the house the night before and purchased $80 worth of crack cocaine. Simpson knew Crapp because he had sold Crapp crack cocaine for three or four years and Crapp had sold cocaine for him.

Strawder was not able to identify the robber because she did not get a good look at his face. On the night of the incident, Strawder told the officer that the robber was approximately 5' 9" tall. Strawder testified at trial that the robber was taller than defense counsel, whom she estimated was 5' 6" or 5' 7". At trial, an officer measured Crapp with a measuring tape as being 5' 6" tall.

Crapp testified in his own defense and denied the allegations against him. He explained why Simpson might be motivated to identify him as the robber. Crapp owed Simpson money when Crapp came up short on his payment to Simpson for the crack Crapp was selling. Crapp testified that a man named Derry Brooks, who also sold drugs for Simpson, pistol-whipped Crapp and robbed him of the money he owed

5

Simpson. Crapp reported the incident to the police and made a written statement, and Brooks was arrested for armed robbery. Crapp ended up in the same jail as Brooks, was threatened, and retracted his statement implicating Brooks.

Crapp believed that Simpson identified him as Strawder's robber because Crapp had Brooks arrested for armed robbery and because Crapp still owed Simpson money.

The prosecutor cross-examined Crapp on whether the incident with Brooks actually happened, whether he reported it to police, whether he gave a statement, and whether Brooks was arrested. In spite of Crapp's testimony and cross-examination, Crapp's trial counsel did not introduce any of the material, such as the Brooks indictment and arrest warrant, to corroborate Crapp's testimony.

In the state's closing argument, the prosecutor told the jury:

[Crapp] came up with the idea that he had reported this incident between he and Brooks to the police. Certainly there would have been a report made.

. . .

[I]f we had the report, then we could tender that. They have got the same option and the same ability to tender evidence just as I do. In fact, they

6

did tender some evidence. . . . If there had been such a police report, they could have tendered that as well.

She also told the jury:

Then we talked about Derry Brooks. Apparently the defendant knew Derry Brooks all of this time. He knew his name before yesterday and he knew his name in sufficient time in advance of this trial to get a picture of him. They would have you believe that it was not sufficient enough time to get a copy of a report or whatever statement that the defendant wrote about him when the incident happened between Mr. Crapp and Mr. Brooks. That is not reasonable.

About three or four months before trial, Crapp told trial counsel that Simpson would identify him as the person he had encountered the night of the robbery because of Crapp's prior dealings with Simpson and Brooks. Trial counsel recalled Simpson's bias as follows: Simpson employed both Crapp and Brooks as drug dealers; Crapp owed some kind of debt to Simpson; and Simpson ordered Brooks to rob Crapp at gunpoint. Trial counsel actually pulled the indictment of Brooks.

Trial counsel did not believe the Brooks indictment would be admissible because it ultimately was dismissed. He also was concerned that to introduce the indictment, the arrest warrant and other documents corroborating Crapp's testimony would negatively impact Crapp's credibility because Crapp withdrew his accusation,

7

resulting in dismissal of the charge against Brooks; it would show that Crapp was willing to put someone in jail and willing to lie to get him out. He acknowledged that this information nevertheless mirrored Crapp's testimony. In spite of the prosecutor's cross-examination of Crapp underscoring the point that there should have been documents corroborating his testimony, trial counsel did not think that introducing the documents was necessary because Crapp's testimony was believable and the documents added nothing to what Crapp had already said. Trial counsel was aware that Strawder did not identify Crapp as the robber and gave a description of the robber that "did not really match" Crapp. He knew that the primary evidence connecting Crapp to the crime was Simpson's testimony.

To prevail on his claim of ineffective assistance of counsel, Crapp was required to show both deficient performance by trial counsel and actual prejudice. *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SC 2052, 80 LE2d 674) (1984); *Smith v. Francis*, 253 Ga. 782, 783 (1) (325 SE2d 362) (1985). When determining deficient performance,

> we address not what is prudent or appropriate, but only what is constitutionally compelled. The appropriate test for whether [Crapp's] counsel was deficient is whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial.

8

Perfection is not required; an ineffectiveness analysis is simply intended to ensure that the adversarial process at trial worked adequately.

(Citations and punctuation omitted.) *Head v. Carr*, 273 Ga. 613, 625 (4) (C) (3) (544 SE2d 409) (2001). As for the prejudice component, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, supra, 466 U. S. at 694 (III) (B). In other words, the defendant must show that "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695 (III) (B).

The case was a pure credibility contest between Simpson and Crapp. And in such cases, defense counsel's failure to introduce available evidence that corroborates a defendant's testimony supports a finding that counsel's performance was deficient. See *Gibson v. State*, 280 Ga. App. 435, (634 SE2d 204) (2006) (trial counsel rendered deficient performance when entire defense to vehicular homicide charges hinged on defendant's testimony that his light was green at the time of the collision yet counsel failed to introduce records of prior occasions where light showed green in all four directions). See also *Hart v. Gomez*, 174 F.3d 1067, 1067-1071 (I, II) (9th Cir. 1999)

(counsel's failure to introduce documents that corroborated testimony crucial to the defense amounted to deficient performance). The trial court did not err in concluding that trial counsel's performance was deficient.

"In close cases, where the evidence presented by the state is thin, mistakes made by trial counsel take on greater significance." *Zant v. Moon*, 264 Ga. 93, 99 (2) (440 SE2d 657) (1994). See *Strickland,* 466 U.S. at 696 (III) (B) ("[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by [counsel's] errors")."[S]ince the evidence against [Crapp] was not overwhelming, resting largely upon the identification testimony of one witness, . . . a reasonable probability exists that the presence of [the corroborating evidence] would have affected the result." *Richardson v. State*, 189 Ga. App. 113, 114 (375 SE2d 59) (1988). The trial court did not err in concluding that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Strickland*, 466 U. S. at 694 (III) (B). See also *Miller v. State*, 285 Ga. 285 (676 SE2d 173) (2009).

*Judgment affirmed. Barnes, P. J., and Adams, J., concur.*