**FIRST DIVISION**
**ELLINGTON, C. J.,**
**PHIPPS, P. J., and DILLARD, J.**

**NOTICE:** Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**February 27, 2013**

# In the Court of Appeals of Georgia

A12A2056. SIMON v. THE STATE.

A12A2171. McCLAIN v. THE STATE.

A12A2460. TRIM v. THE STATE.

PHIPPS, Presiding Judge.

In connection with a home invasion, Walter Simon, Cortez McClain and Anthony Trim were tried together on charges of felony murder, armed robbery, burglary, aggravated assault, and false imprisonment.[1] Simon and McClain were found guilty of attempted armed robbery (as a lesser included offense of armed robbery), burglary, and false imprisonment, and not guilty of felony murder and aggravated assault; Trim was found guilty of attempted armed robbery (as a lesser included offense of armed robbery), burglary, aggravated assault, and false

---

[1] A fourth individual, Kara Simon Casey, was also charged in the indictment with the same crimes, but her trial was severed from the appellants' trial.

imprisonment, and not guilty of felony murder. Simon, McClain and Trim appeal, each challenging the sufficiency of the evidence to support his convictions. McClain also challenges the court's grant of the state's motion to excuse one juror for cause. Simon's and Trim's challenges are without merit, so we affirm their convictions. McClain's challenge to the grant of the motion to excuse the juror for cause has merit, so his convictions are reversed. However, because the evidence was sufficient to support McClain's convictions, McClain may be retried.[2]

*Case No. A12A2056*

1. Simon contends that the evidence was insufficient to support his convictions. We disagree.

"When an appellant challenges the sufficiency of the evidence, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[3]

---

[2] See *Lively v. State*, 262 Ga. 510, 512 (3) (421 SE2d 528) (1992) (where appellant's conviction was reversed due to the court's erroneous ruling on a motion to excuse a juror for cause, but the evidence was sufficient, appellant could be retried).

[3] *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979) (citation omitted).

Viewed in the light most favorable to the prosecution, the evidence showed the following. On June 16, 2010, Erick Moncrieffe was in the home of his friend, Travys Davy, when he heard the doorbell ring. Moncrieffe saw that McClain, whom he knew, was at the front door. Moncrieffe opened the door and, "a split second" later, two masked men came inside and put handguns to Moncrieffe's face. Moncrieffe was struck on the head or "pistol-whipped," and ordered to walk to the kitchen. The three men followed Moncrieffe to the kitchen. Moncrieffe was ordered to open the garage door and sit down.

A woman then entered the house through the garage. Moncrieffe recognized the woman, who was not masked, as someone who had previously visited the house with McClain. Using black masking or duct tape, the woman bound Moncrieffe's hands and covered his eyes.

Moncrieffe was ordered to tell Davy, who was upstairs, to come downstairs. Moncrieffe did not comply, and he was pistol-whipped repeatedly; he sustained injuries to his head. Davy heard the commotion and, when he looked out of his bedroom door, saw a masked gunman. Davy stayed upstairs; he retrieved a rifle and directed another resident to call police.

Moncrieffe was ordered to "kick it out," which Moncrieffe was told meant "give me your stuff." The intruders stood over Moncrieffe and repeated their demands, saying, "Tell him to come downstairs; you won't make it." They continued to pistol-whip him. Moncrieffe's wallet (which contained cash) and his cell phone were taken. McClain had said nothing during the incident. The intruders left about 30 minutes after they had entered the house.

Moncrieffe then managed to remove the tape from his hands and head, and he ran through the house. He grabbed the rifle from Davy, who had come downstairs. Davy opened the front door and heard police sirens. Moncrieffe and Davy went outside, where they saw a vehicle in front of the house. Two people hurriedly entered the vehicle.

Shots were fired from the vehicle as it was being driven away. When Moncrieffe was asked at trial if he could see whether the occupants of the vehicle were the people who had just been in the house, he replied that he saw the mask, and said or thought, "that's them." Moncrieffe added that he recognized the vehicle ("like a Buick . . . an old car") as one that had been at the house two days earlier. Moncrieffe returned fire, and the vehicle left the neighborhood.

A police officer responding to a "shots fired" call at about 2 p.m. on the date of the incident observed a 1993 ("older") Lincoln automobile traveling at a high rate of speed; the vehicle was leaving Davy's subdivision as the officer was entering the subdivision. The officer observed that the vehicle had a bullet hole in the rear window and was occupied by several males. With the siren and emergency lights on his police vehicle activated, the officer pursued the vehicle. The pursued vehicle crashed, and the officer, who was the first officer to arrive on the scene, saw a man with "dreads" jump out of the rear door of the vehicle and run away; at trial, Davy described McClain as having "dreads" (and the state introduced photographs of McClain, with his hairstyle visible, taken days after the incident). Four individuals remained in the vehicle; Simon was the driver, and Trim and Casey were the rear passengers. The passenger in the front seat of the vehicle, Devonte Bowles, was wearing a mask and was not moving; he had sustained a gunshot wound to the head and later died as a result of the injury.[4]

A police corporal also responded to the dispatch call. He saw "a mid 90s model" Lincoln automobile traveling erratically and at a high rate of speed. With the siren and emergency lights on his vehicle activated, he began pursuing the vehicle.

_____

[4] The felony murder counts of the indictment involved Bowles's death.

5

The corporal then saw the pursued vehicle leave the roadway and crash. At the crash site, the corporal observed that the injured front-seat passenger, Bowles, was wearing a mask. Officers found two handguns at the crash site - one on the ground near the vehicle, and another in the front passenger seat area of the vehicle. The vehicle was equipped with hand controls that allowed it to be operated without foot pedals; Simon told police he had been paralyzed as a result of an earlier injury and was unable to walk.

In an interview conducted on the day of the incident, Simon told a police detective that he had been asked to drive his vehicle to Davy's house to buy marijuana, and that Bowles and Casey were with him. Simon said that he had waited in the driveway while the vehicle's other occupants went inside the house, and that when they exited the house, Bowles was wearing a mask. After they entered the vehicle, a man exited the house and began shooting at the vehicle.

In another interview conducted the same day, Trim, after being advised of and waiving his *Miranda* rights, admitted to a police detective that "a plan to do this" was discussed in the vehicle during the drive to Davy's house; that Trim and Bowles had exited the vehicle and entered the house wearing masks and carrying guns; that a woman had the duct tape and a knife; that the intruders had fled without taking

6

property because someone had said that the police were coming; and that he and the woman were in the back seat of the vehicle and Bowles was in the front seat when they left Davy's house.

The night before the incident, McClain, whom Davy had known for several years, had visited Davy's home. McClain had been accompanied by Casey and a man; the man stayed in the vehicle during that visit; the group was in the same vehicle that was at Davy's house on the day of the incident. The day before the incident, Davy had received $40,000 in cash in connection with a music production deal, and most of the money was in the house; Davy had shared this information with McClain.

OCGA § 16-8-41 (a) pertinently provides that a person commits the offense of armed robbery when, with intent to commit theft, he takes property of another from the person or the immediate presence of another by use of an offensive weapon. A person commits the offense of criminal attempt when, with intent to commit a specific crime, he performs any act which constitutes a substantial step toward the commission of that crime.[5] The indictment alleged that Simon, McClain and Trim committed armed robbery when they unlawfully, with intent to commit theft, took Moncrieffe's currency and cell phone from his person, by use of a handgun.

---

[5] OCGA § 16-4-1.

OCGA § 16-7-1[6] pertinently provided that a person commits the offense of burglary when he, without authority and with the intent to commit a felony or theft therein, enters or remains within the dwelling house of another. The indictment pertinently alleged that Simon, McClain and Trim committed that offense by unlawfully, without authority, and with the intent to commit a theft therein, entering the dwelling house of another.

OCGA § 16-5-21 (a) (2) pertinently provides that a person commits the offense of aggravated assault when he assaults with a deadly weapon or with any object which, when used offensively against a person, is likely to or actually does result in serious bodily injury. The indictment pertinently alleged that Simon, McClain and Trim committed aggravated assault by assaulting Moncrieffe with a handgun which, when used offensively against a person is likely to result in serious bodily injury, by striking him in the head with the gun and threatening to kill him.

---

[6] We apply the version of OCGA § 16-7-1 which was in effect in June 2010, the time of the offense. OCGA § 16-7-1 was amended effective "July 1, 2012, and shall apply to offenses which occur on or after that date. Any offense occurring before July 1, 2012, shall be governed by the statute in effect at the time of such offense." Ga. L. 2012, pp. 899, 949, §§ 3-1, 9-1. See *Gorman v. State*, 318 Ga. App. 535 (1), n. 2 (734 SE2d 263) (2012).

OCGA § 16-5-41 (a) provides that a person commits the offense of false imprisonment when, in violation of the personal liberty of another, he arrests, confines or detains such person without legal authority. The indictment alleged that Simon, McClain and Trim committed false imprisonment by unlawfully, in violation of Moncrieffe's personal liberty, confining Moncrieffe without legal authority.

Simon asserts that the evidence was insufficient because the state failed to prove that he knew that an armed robbery would occur, his statement to police that he had driven to Davy's house for the purpose of buying marijuana was credible, and there was no evidence that he had discussed or participated in the armed robbery. Further, he posits, the circumstantial evidence supported his theory that he went to the house to purchase drugs and "ended up fleeing for his life" after Bowles returned to the vehicle wearing a mask and Moncrieffe emerged from the house shooting at the vehicle.

> To support a verdict, circumstantial evidence need exclude only reasonable hypotheses, not exclude every inference or hypothesis except that of the defendant's guilt. Whether circumstances were sufficient in this case to exclude every reasonable hypothesis except that of defendant's guilt was a question for the jury. It is only when the

evidence is insupportable as a matter of law that the jury's verdict may be disturbed, even where the evidence is entirely circumstantial.[7]

And,

[a] participant to a crime may be convicted although he is not the person who directly commits the crime. A person who intentionally aids or abets in the commission of a crime or intentionally advises, encourages, hires, counsels or procures another to commit the crime may be convicted of the crime as a party to the crime. Mere presence at the scene is not sufficient to convict one of being a party to a crime, but criminal intent may be inferred from conduct before, during, and after the commission of a crime.[8]

It was for the jury to determine the credibility of the witnesses, to resolve any conflicts or inconsistencies in the evidence,[9] to decide the reasonableness of Simon's hypothesis,[10] and to determine whether he aided and abetted his co-defendants in committing the crimes.[11]

---

[7] *Buruca v. State*, 278 Ga. App. 650, 652-653 (1) (629 SE2d 650) (2006) (footnote omitted).

[8] Id. at 652 (1).

[9] *Mickens v. State*, 277 Ga. 627, 629 (593 SE2d 350) (2004).

[10] *Bush v. State*, 317 Ga. App. 439, 441 (1) (731 SE2d 121) (2012).

[11] Id.

There was evidence that Simon was a party to the crimes, including evidence that he drove one or more of the co-defendants to the house just before the crimes were committed; that he was in the vehicle when plans to commit the crimes were discussed; that he was in Davy's driveway when Trim and Bowles entered the front door of the house, wearing masks and carrying guns; that his specially-equipped vehicle was at Davy's house one or two days before the crimes were committed; and that he drove the perpetrators away from the scene after the crimes were committed - speeding, driving erratically, and not stopping when the police, with sirens and lights activated, began following Simon's vehicle. The jury could have found that Simon's hypothesis was unreasonable because, inter alia, Simon had left Davy's neighborhood but did not stop when police vehicles were behind him, even though he purportedly had fled the scene because Moncrieffe was shooting at his vehicle. Although circumstantial, the evidence was sufficient to authorize a rational trier of fact to find that Simon was guilty beyond a reasonable doubt of the crimes for which he was convicted.[12]

---

[12] See *Thornton v. State*, 292 Ga. 87, 88 (2) (734 SE2d 393) (2012) (evidence was sufficient to prove appellant was a party to the crime of armed robbery and burglary where he drove the getaway vehicle); *Bush*, supra at 440 (1); *Buruca*, supra; *Jackson v. State*, 274 Ga. App. 279, 281 (617 SE2d 249) (2005) (where getaway driver waited for his co-defendant to return to the vehicle, evidence was sufficient to

2. McClain contends that the evidence was insufficient to support his convictions because the only evidence of his guilt was Moncrieffe's testimony, and Moncrieffe was not credible. In any event, he asserts, Moncrieffe had allowed him to enter the house, and there was no evidence that McClain had actively participated in the crimes. The evidence was sufficient.

There was evidence that McClain summoned the residents to the door, and that immediately after Moncrieffe opened the door for McClain, Trim and Bowles, wearing masks and carrying guns, entered the house; that the three men followed Moncrieffe from the front door (McClain was one of the three men at the front door) to the kitchen after Moncrieffe was struck with a gun and ordered to walk to the kitchen; that McClain had brought Casey to Davy's house the day before the home invasion, using the same vehicle used in the crimes; that a man with "dreads" was seen fleeing from the crashed vehicle and McClain had such a hairstyle at the time of trial; and that Davy had told McClain prior to the home invasion that he had a

find the driver guilty of crimes directly committed by co-defendant); *Head v. State*, 261 Ga. App. 185, 187 (1) (582 SE2d 164) (2003) (affirming appellant's conviction as a party to the crime of burglary where she drove the perpetrator to the premises, served as the getaway driver, and sped away from the scene after the burglary was committed).

12

substantial amount of cash in the house. The fact that Moncrieffe had opened the door for McClain does not mean that McClain committed no burglary. If McClain was present and assisted in the commission of the burglary, he could be convicted as a party thereto.[13]

Credibility was for the jury.[14] Even though the evidence was circumstantial, the jury was authorized to find beyond a reasonable doubt that McClain was guilty as a party to the crimes of which he was convicted.[15]

3. McClain contends that the trial court erred in excusing for cause a juror whose daughter had been prosecuted by one of the assistant district attorneys who was prosecuting the instant case and had been represented by the attorney who was representing Trim in the instant case. Based on the record, we find that the trial court abused its discretion in excusing the juror.

---

[13] See *Adcock v. State*, 269 Ga. App. 9, 12 (2) (603 SE2d 340) (2004).

[14] *Nangreave v. State*, 318 Ga. App. 437, 439 (1) (734 SE2d 203) (2012).

[15] See id.; *Bush*, supra; *Adcock*, supra.

During voir dire, members of the panel were asked en masse a series of statutorily-required questions pertaining to possible juror bias in the case.[16] The jurors were directed to raise their juror cards if they believed that any of the questions applied to them; none of the jurors responded.

The panel was subsequently asked if any juror knew Trim's attorney, or had a family member or close friend prosecuted by the Gwinnett County District Attorney's office;[17] one juror gave an affirmative response. The juror revealed that one of the assistant district attorneys prosecuting the instant case had prosecuted her daughter

---

[16] OCGA § 15-12-164 (a) pertinently provides as follows. On voir dire in a felony trial, the jurors shall be asked:

> (1) "Have you, for any reason, formed and expressed any opinion in regard to the guilt or innocence of the accused?" If the juror answers in the negative, the question in paragraph (2) of this subsection shall be propounded to him; (2) "Have you any prejudice or bias resting on your mind either for or against the accused?" If the juror answers in the negative, the question in paragraph (3) of this subsection shall be propounded to him; (3) "Is your mind perfectly impartial between the state and the accused?" If the juror answers this question in the affirmative, he shall be adjudged and held to be a competent juror in all cases where the authorized penalty for the offense does not involve the life of the accused.

[17] The instant case was prosecuted in Gwinnett County.

14

in a prior case, and that the attorney representing Trim in the instant case had represented her daughter in that earlier case.

Trim's attorney asked the juror: "Based on the fact of our previous dealings, do you feel that there is anything that would prevent you from being fair and impartial to both sides here today?" The juror replied: "I don't think there is anything that would keep me from being fair and impartial to both sides, but considering that you were my daughter's attorney and [the assistant district attorney] . . . was the prosecutor, then I would feel uncomfortable sitting in on this case." No further inquiry was made of the juror regarding possible bias.

The assistant district attorney involved in the prior case moved to excuse the juror for cause, stating that the juror had indicated that she did not think she could serve in the instant case "because I prosecuted her daughter and [Trim's attorney] defended her daughter"; the assistant district attorney stated the daughter had been tried for armed robbery, and that the daughter's defense attorney was "not completely successful" in trying the case, but had prevailed in some matters on appeal. The assistant district attorney asserted that he believed that the juror's answers indicated she "wouldn't be able to sit and be fair" in the case. The judge interpreted the

assistant district attorney's position as being that the juror was prejudiced against the state.

McClain's attorney opposed the state's motion, noting that the juror had said she "would feel uncomfortable," and adding that she did not believe that the juror had ever been asked the "questions that reach the threshold of whether or not she would be an impartial, unbiased juror."[18] The court then granted the state's motion to excuse the juror for cause.

OCGA § 15-12-164 (a) sets out the test for disqualification for cause in felony cases.[19] If a juror answers any of the questions so as to render her incompetent or if

---

[18] At trial, counsel for Simon and Trim joined McClain's opposition to the state's motion. On appeal, however, Simon and Trim do not complain of the court's ruling. Thus, as to Simon and Trim, the ruling is not reviewable. See OCGA § 5-6-40 (the appellant or cross-appellant shall file with the clerk of the appellate court an enumeration of errors which shall set out separately each error relied upon); *State v. Crapp*, 317 Ga. App. 744, 745 (1) (732 SE2d 806) (2012) ("[I]n order for a Georgia appellate court to review a trial court ruling for legal error, a party must set forth in the enumeration of errors the allegedly erroneous ruling. The appellate court is precluded from reviewing the propriety of a lower court's ruling if the ruling is not contained in the enumeration of errors.") (citations omitted); *Tyler v. State*, 147 Ga. App. 394, 395 (2) (249 SE2d 109) (1978) (where the objection argued below is not argued on appeal, it is considered abandoned).

[19] See *Kim v. Walls*, 275 Ga. 177, 178, n. 1 (563 SE2d 847) (2002).

16

she is found to be incompetent by the judge, she shall be set aside for cause.[20] The court shall also excuse for cause any juror who from the totality of her answers on voir dire is determined by the court to be substantially impaired in her ability to be fair and impartial.[21]

> Whether to strike a juror for cause lies within the sound discretion of the trial judge, and the trial court's exercise of that discretion will not be set aside absent a manifest abuse of discretion. A juror's opinion of her qualification to serve is not determinative of the question, and a juror's expression of belief in the credibility of a witness does not mandate that the juror be excused for cause. Rather, for a juror in a criminal case to be excused for cause on the statutory ground that her ability to be fair and impartial is substantially impaired, *it must be shown that she holds an opinion of the guilt or innocence of the defendant that is so fixed and definite that the juror will not be able to set it aside* and decide the case on the evidence or the court's charge on the evidence. A juror's knowledge of, or relationship with, a witness, attorney, or party is a basis for disqualification *only if it has created in the juror a fixed opinion of guilt or innocence or a bias for or against the accused.* The law presumes that potential jurors are impartial, and the burden of proving partiality is on the party seeking to have the juror disqualified.[22]

---

[20] OCGA § 15-12-164 (c).

[21] OCGA § 15-12-164 (d).

[22] *Poole v. State*, 291 Ga. 848, 851-852 (734 SE2d 1) (2012) (citations and punctuation omitted; emphasis supplied).

17

"[W]hen a prospective juror has a close relationship with a party or a relationship that suggests bias, the trial court . . . is statutorily bound to conduct voir dire adequate to the situation, whether by questions of its own or through those asked by counsel."[23]

In the present case, when the juror was asked the questions required by OCGA § 15-12-164 (a), she indicated that she had not formed an opinion regarding the guilt or innocence of the accused, that she had no prejudice or bias either for against the accused, and that her mind was perfectly impartial between the state and the accused. Thus, pursuant to OCGA § 15-12-164 (a) (3), she was a competent juror.[24] When asked if, given her previous dealings with defense counsel, anything would prevent the juror from being fair and impartial, the juror replied that she did not think so, though she would feel uncomfortable sitting on the jury.

The juror's relationships with counsel did not necessarily or categorically require her exclusion from the jury.[25] Instead, the relationships were bases for

---

[23] Id. at 853, citing *Kim*, supra.

[24] See OCGA § 15-12-164 (a) (3).

[25] See generally OCGA § 15-12-163, pertinently providing that, upon objection and the judge's satisfaction of the truth of the objection, the judge shall set aside for cause certain jurors (e.g., a juror that is not a citizen, or a juror that is so near of kin

18

disqualification *only* if they had created in the juror a fixed opinion of guilt or innocence or a bias for or against the accused.[26] None of the juror's responses indicated that she held any opinion about the defendants' guilt or innocence or a bias

---

to the prosecutor, the accused or the victim as to be disqualified); *Doss v. State*, 264 Ga. App. 205, 209 (4) (b), 214 (4) (f) (590 SE2d 208) (2003) (there is no per se rule disqualifying for cause a class or category of persons from jury duty based on employment relationships, except sworn law enforcement officers, and trial courts have an extremely broad discretion once an adequate inquiry has been conducted).

[26] *Poole*, supra; *Gibson v. State*, 267 Ga. App. 473, 478 (4) (600 SE2d 417) (2004).

for or against the accused.[27] Although the circumstances presented here *could* affect

a juror's impartiality, in this case there was no showing that they had.[28]

---

[27] See generally *Poole*, supra; *Somchith v. State*, 272 Ga. 261, 262-263 (2) (527 SE2d 546) (2000) (recognizing that before a juror is excused for cause, it must be shown that he or she holds an opinion of the guilt or innocence of the defendant that is so fixed and definite that the juror will be unable to set the opinion aside, and holding that the trial court did not abuse its discretion in refusing to excuse jurors for cause: where one juror knew the sheriff's deputies, including at least one deputy who would be a witness, and expressed a belief in the credibility of the witness, but stated he could set aside his personal relationships and decide the case based on the evidence and instructions; where one juror knew the district attorney because of prior prosecutions of cases, but juror stated he did not believe the relationship would influence his deliberations; and where one juror stated that she believed that a killing should only be in self-defense, when the defendant was claiming he committed voluntary manslaughter, but said she could set aside her own opinions and decide the case based on the court's instructions); *Holmes v. State*, 269 Ga. 124, 125 (2) (498 SE2d 732) (1998) (trial court did not abuse its discretion by refusing to excuse a juror for cause who stated that she would "try" to put aside her emotions and consider the case based upon the evidence); *Johnson v. State*, 262 Ga. 652, 653 (2) 424 SE2d 271) (1993) (before a juror can be disqualified for cause, it must be shown that he holds an opinion so fixed and definite that he will be unable to set the opinion aside and decide the case based upon the evidence or the court's charge upon the evidence; thus, where a juror expressed some reservations concerning his ability to set aside his personal experiences, the trial court did not abuse its discretion by refusing to excuse the juror for cause). Compare *Mincey v. State*, 251 Ga. 255, 264 (9) (304 SE2d 882) (1983) (court did not err in excusing juror for cause where she revealed that she knew the defendant's family, could not decide the case based upon the evidence and the law, and could under no circumstances return a verdict of guilty).

[28] See generally *Robinson v. State*, 180 Ga. App. 248, 249 (2) (348 SE2d 761) (1986).

As stated above, trial courts have extremely broad discretion in deciding whether to exclude a juror for cause *once an adequate inquiry has been conducted.*[29] But no adequate inquiry was conducted in this case, and no bias has been shown on the record. Thus, an abuse of discretion resulted.[30]

Accordingly, McClain's convictions must be reversed.[31] Because the evidence meets the standard of *Jackson v. Virginia*,[32] the case may be retried.[33]

### Case No. A12A2460

4. Trim contends that the evidence was insufficient to support his convictions because it was based on the testimony of witnesses who were not credible. Again, credibility was for the jury to decide.[34] The evidence was sufficient for a rational trier

---

[29] *Kim*, supra at 179.

[30] See id.

[31] See *Lively*, supra at 512 (2); see generally *Ivey v. State*, 258 Ga. App. 587, 588-594 (2) (574 SE2d 663) (2002) (reversing conviction where trial court abused its discretion by refusing to excuse a juror for cause, after judge improperly used a rehabilitation question to justify retaining the biased juror).

[32] Supra.

[33] See *Lively*, supra at 512 (3).

[34] See *Nangreave*, supra.

21

of fact to find Trim guilty beyond a reasonable doubt of the crimes of which he was convicted.[35]

Embedded in the argument section of his brief, Trim contends that he was misled into making an incriminating statement to police, and that he was in custody for hours, deprived of contact with family or legal counsel prior to his interrogation. To the extent Trim argues that his statement was inadmissible or involuntary, thus asserting two alleged errors within a single enumerated error, the argument will not be reviewed.[36] To the extent Trim argues that his statement was not credible, we reiterate that credibility issues were for the jury to decide.[37]

*Judgments affirmed in Case Nos. A12A2056 and A12A2460. Judgment reversed in Case No. A12A2171. Ellington, C. J., concurs. Dillard, J., concurs in Case Nos. A12A2056 and A12A2460 and in Division 2 of A12A2171 and concurs in the judgment only as to Division 3 of A12A2171.*

---

[35] See id.; *Bush*; *Adcock*.

[36] *Barnett v. State*, 204 Ga. App. 491, 495 (2) (b) (420 SE2d 43) (1992); see *Ellis v. State*, 316 Ga. App. 352, 359 (3), n. 4 (729 SE2d 492) (2012) ("an appealing party may not use its brief to expand its enumeration of error by arguing the incorrectness of a ruling not mentioned in the enumeration of the errors").

[37] See generally *Handley v. State*, 289 Ga. 786, 787 (1) (716 SE2d 176) (2011).