## S12A0662. POOLE v. THE STATE.
(734 SE2d 1)

BENHAM, Justice.

Appellant Tammy Poole was convicted of the April 2007 malice murder of her husband, Robert Michael Poole, possessing a firearm during the commission of a felony and while a convicted felon, simple battery/family violence, and making a false statement.[1] After reviewing her contentions of ineffective assistance of counsel, improper jury instructions, and erroneous evidentiary rulings, we affirm the judgment of conviction.

---

[1] The crimes occurred on April 22, 2007. Appellant was charged in an indictment returned by a Pickens County grand jury on June 20, 2007, with malice murder, felony murder (with felon in possession of a firearm as the predicate felony), possession of a firearm during the commission of a crime, making a false statement to law enforcement officers, making terroristic threats to the murder victim (by threatening to kill him), simple battery/family violence (by striking the victim with her hand), and being a felon in possession of a firearm. The trial commenced on June 9, 2008, and concluded on June 18, 2008, with the jury finding appellant guilty of all charges except the making of terroristic threats. Appellant was sentenced on August 25, 2008, to life imprisonment for malice murder; sentences to be served concurrently with the life sentence of five years for false statement, five years for possession of a firearm during the commission of a crime, and twelve months for simple battery; and a five-year sentence, to be served consecutively to the life sentence, for possession of a firearm while a convicted felon. Appellant's motion for new trial, filed timely on September 4, 2008, was filed as a consolidated motion on June 15, 2011, that incorporated the amended motions for new trial filed August 18, 2010, December 29, 2010, and February 4, 2011. The consolidated motion was the subject of a hearing on June 17, 2011, and the trial court denied the consolidated motion on August 19, 2011. Appellant filed a timely notice of appeal on September 16, 2011, and, upon receipt of the appellate record, the case was docketed to the April 2012 term of this Court and was submitted for decision on the briefs.

The medical examiner who performed an autopsy on the body of Robert Michael Poole testified Poole died as a result of a "near-contact" gunshot wound to the left side of his forehead, just above his left eye. A firearms examiner from the Georgia Bureau of Investigation testified the bullet removed from the victim's body during the autopsy was fired from the Remington 22 semiautomatic rifle that was found in the bedroom shared by appellant and the victim. Appellant told the first responders to the emergency call for assistance that the victim had shot himself accidentally. She later told authorities that the rifle had discharged when it caught on a broken laundry basket as the victim attempted to pick up the rifle and, later, that appellant had been shot while he and appellant struggled for possession of the rifle.[2] She told some friends and neighbors that the victim had committed suicide and that she had not told the police that fact to avoid hurting his family members. The medical examiner opined that the fatal wound was more likely inflicted by another rather than self-inflicted given that the weapon used was a rifle and the location of the wound was not a common site for a self-inflicted gunshot wound. Gunshot-residue testing of both appellant and the victim were negative, with several experts explaining the results might be due to the fact that the primer of the ammunition used in the shooting did not contain antimony, one of three metals typically associated with gunshot residue.

The victim's brother-in-law was one of several persons in the company of appellant and the victim several hours before the shooting, and he testified he heard the victim tell appellant he wanted a divorce and would seek a restraining order against appellant. The witness stated appellant then struck the victim with her hand and told him she would kill him before she let him leave her. Several other persons also testified to having seen appellant strike the victim and utter the threat. The victim's sister, who was also present about three hours before the victim was killed, testified appellant accused the victim of having an intimate relationship with another woman, and the victim began to pack his belongings in his truck and expressed his intent to seek a divorce from appellant. A woman who was incarcerated in the same facility as appellant testified that appellant told her she had gotten the victim "out of the picture" in order to be with a married man she recently had been seeing. The inmate/witness also testified that appellant offered to pay the witness to destroy the green

---

[2] Several audio- and videotaped interviews of appellant by law enforcement personnel and one interview of appellant by the editor of a local newspaper were played before the jury. Neither the recordings nor transcripts of the interviews are in the appellate record, leaving this Court without knowledge of the contents of the tapes heard and/or seen by the jury.

shirt appellant was wearing when the victim was killed, a suitcase, and an aluminum box.[3] The State presented evidence that, at the time the victim was killed, appellant had been convicted of several felonies.

1. Appellant contends the evidence presented by the State was not sufficient to authorize the convictions because the only direct evidence, the testimony of appellant's fellow inmate, was impeached, and because the evidence was circumstantial and did not exclude every reasonable hypothesis of guilt. See OCGA § 24-4-6. However, questions concerning reasonableness are generally for the jury and where the jury is authorized to find that the evidence, although circumstantial, was sufficient to exclude every reasonable hypothesis other than guilt, an appellate court will not disturb the finding unless the verdict of guilty is unsupportable as a matter of law. *Brooks v. State*, 281 Ga. 514 (1) (640 SE2d 280) (2007). Furthermore, the credibility of a witness is a question for the jury, not the appellate court. *Pridgett v. State*, 290 Ga. 365, 366 (720 SE2d 639) (2012). The evidence, as summarized above, was sufficient for a rational trier of fact to find appellant guilty beyond a reasonable doubt of malice murder, simple battery/family violence, possession of a firearm during the commission of a crime and while a convicted felon, and making a false statement. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Sampson v. State*, 279 Ga. 8 (1) (608 SE2d 621) (2005) (making a false statement); OCGA §§ 16-5-23 (f) (simple battery of a spouse); 16-11-106 (possession of a weapon during the commission of a crime), and 16-11-131 (possession of a firearm by a convicted felon).

2. Appellant complains the trial court erred when it denied her motion to bifurcate the trial and try separately the count of the indictment charging appellant with being a felon in possession of a firearm. However, the trial court did not err. Bifurcation was not authorized because the charge of being a felon in possession served as the underlying felony of the count of the indictment charging felony murder (*Finley v. State*, 286 Ga. 47 (2) (685 SE2d 258) (2009)), and a motion to bifurcate should be denied where the count charging possession of a firearm by a convicted felon might serve as the underlying felony supporting a felony murder conviction. *Head v. State*, 253 Ga. 429 (3) (a) (322 SE2d 228) (1984), overruled on other grounds in *Ross v. State*, 279 Ga. 365, 368, n. 17 (614 SE2d 31) (2005).

---

[3] The green shirt was collected as evidence early in the investigation and tested negative for gunshot residue and positive for stains made by the victim's blood. Law enforcement personnel discovered the aluminum box and its contents, drug paraphernalia.

3. Appellant complains the trial court erred when it denied appellant's motion to strike a juror for cause and when the trial court failed to conduct an inquiry of the juror after the juror disclosed she held a preconceived notion concerning one of the witnesses that was not beneficial to the defense.

During voir dire, the venirewoman disclosed she knew a witness[4] and, upon further questioning by defense counsel, revealed that she had employed the witness to do clerical work for one year approximately two years before the trial. During voir dire, the venirewoman did not express an opinion about the witness and was not asked if her relationship with the witness would affect her partiality.[5] The day after being selected to serve on the jury and prior to the jury being sworn, the venirewoman sent a note to the trial court, the prosecutor, and defense counsel in which she asked to be removed from serving on the jury due to having been "closely associated" with the witness. In the note, the juror disclosed she had "a pre-conceived opinion of this witness" that "would not benefit the defense." During a discussion outside the presence of the venirewoman, the trial court and counsel recalled that the juror had disclosed her acquaintance with the witness during voir dire. Defense counsel stated he had been unaware during voir dire of the closeness of the relationship between the juror and the witness, and the assistant district attorney asserted that nothing had come to light that made the juror unqualified to serve. The trial court denied defense counsel's motion to remove the juror for cause and replace her with an alternate. After discussing another matter, the trial court returned to the issue of the juror and asked counsel whether the juror should be brought into the pretrial discussion. Defense counsel declined the offer, and the assistant district attorney agreed with the trial court to "leave it lay."

Whether to strike a juror for cause lies within the sound discretion of the trial judge (*Corza v. State*, 273 Ga. 164 (3) (539 SE2d 149) (2000)), and the trial court's exercise of that discretion will not be set aside absent a manifest abuse of discretion. *Lewis v. State*, 279 Ga. 756 (3) (a) (620 SE2d 778) (2005). A juror's opinion of her qualification to serve is not determinative of the question (OCGA § 15-12-164 (d); *Jones v. State*, 232 Ga. 324, 330 (206 SE2d 481) (1974)), and a juror's

---

[4] The witness was the landlady of appellant and the victim and lived near the scene of the shooting.

[5] All members of the venire were asked en masse the statutory questions (see OCGA §§ 15-12-163 and 15-12-164) at the beginning of voir dire. No one gave a positive response to the questions set forth in OCGA § 15-12-164 (a) (1), (2) or a negative response to the question in (a) (3). The two persons who were related to the victim within the prohibited degree were dismissed for cause. See OCGA § 15-12-164 (a) (4).

expression of belief in the credibility of a witness does not mandate that the juror be excused for cause. *Merneigh v. State*, 242 Ga. App. 735 (6) (531 SE2d 152) (2000). Rather, for a juror in a criminal case to be excused for cause on the statutory ground that her ability to be fair and impartial is substantially impaired, it must be shown that she holds an opinion of the guilt or innocence of the defendant that is so fixed and definite that the juror will not be able to set it aside and decide the case on the evidence or the court's charge on the evidence. *Higginbotham v. State*, 287 Ga. 187 (5) (a) (695 SE2d 210) (2010). A juror's knowledge of, or relationship with, a witness, attorney, or party is a basis for disqualification only if it has created in the juror a fixed opinion of guilt or innocence or a bias for or against the accused. *Gibson v. State*, 267 Ga. App. 473 (4) (600 SE2d 417) (2004). The law presumes that potential jurors are impartial, and the burden of proving partiality is on the party seeking to have the juror disqualified. *Kim v. Walls*, 275 Ga. 177, 179 (563 SE2d 847) (2002). See also OCGA § 15-12-164 (a) (3), (b) (juror who answers the first two statutory voir dire questions in the negative and the third in the affirmative "shall be adjudged and held to be a competent juror . . ." and either the State or the defendant has the right to introduce evidence to show that the juror's answers are untrue). In the absence of evidence that the juror held a fixed and definite opinion concerning the guilt or innocence of the defendant that she could not set aside and that she could not decide the case on the evidence or the court's instructions, the trial court did not abuse its discretion in failing to excuse her for cause. *Torres v. State*, 253 Ga. App. 318 (2) (558 SE2d 850) (2002). See *Elliott v. Home Depot U.S.A.*, 275 Ga. App. 865, 868 (622 SE2d 77) (2005); *Gibson v. State*, supra, 267 Ga. App. at 479.

Appellant contends the trial court erred when it failed to conduct a judicial voir dire of the juror after learning the contents of the juror's note and after defense counsel and the assistant district attorney had declined to question the juror further. While appellant recognizes that the burden of proving a juror's partiality rests with the party seeking to have the juror disqualified (*Kim v. Walls*, supra, 275 Ga. at 179), she argues the trial court had a duty to conduct sua sponte an examination of the challenged juror, suggesting that the trial court was required to provide evidence on which to base its decision to retain or remove the juror. In *Valentine v. State*, 265 Ga. App. 139 (2) (592 SE2d 918) (2004), the Court of Appeals reversed a conviction because "[n]either the trial court nor the prosecutor elicited sufficient information about the juror's relationship with the victim's mother 'to allow the court to make an *objective* evaluation of her partiality.

[Cit.]'" (emphasis in original).[6] In that case, after the jury had been impaneled and sworn, a juror notified the trial court that she recognized a witness, the victim's mother, as a fellow church member and that her relationship with the witness would affect the juror's ability to fairly and impartially judge the guilt or innocence of the defendant. The trial court denied the motion to strike the juror for cause after, in response to the trial court's question, the juror stated her belief that she could give the same weight to the testimony of her fellow church member as she would to other witnesses and could give the defendant a fair trial. Citing this Court's decision in *Kim v. Walls*, supra, 275 Ga. at 179, the Court of Appeals ruled that the trial court had abused its discretion in qualifying the juror "without more thorough questioning by the trial court or the prosecutor. . . ." 265 Ga. App. at 141.

In *Kim v. Walls*, 275 Ga. at 177, we held that an abuse of discretion occurred when the trial court curtailed voir dire questioning of a venireperson who expressed partiality in favor of a party because of her professional relationship with the party, thereby preventing the process from ferreting out bias. Earlier in the opinion, we stated that when a prospective juror has a close relationship with a party or a relationship that suggests bias, the trial court must do more than "rehabilitate" the juror through the use of a "talismanic question." Id. at 178. We stated that the trial court "is statutorily bound to conduct voir dire adequate to the situation, whether by questions of its own or through those asked by counsel." Id. In criminal trials, a trial court has a statutory duty set out in OCGA § 15-12-163 (c) to hear such evidence as is submitted in relation to the truth of the challenges for cause set forth in OCGA § 15-12-163 (b) (citizenship, residence, age, mental fitness, kinship to prosecutor, accused, or victim, prior felony conviction, ability to communicate in the English language); and, in a felony trial, the trial court is statutorily required by OCGA § 15-12-164 (b) to hear the evidence introduced by the State or the accused to show the lack of truthfulness of the juror's answers to the statutory voir dire examination found in OCGA § 15-12-163 (a). These statutes require a trial court to conduct further voir dire at which counsel for the parties attempt to elicit information that supports their position concerning the retention or dismissal of the challenged juror. While the trial court is authorized to pose questions during the voir dire of the venireperson who is the subject of a challenge for cause, our statement in *Kim v.*

---

[6] The imposition of an independent duty on a trial court to ferret out possible bias of a potential juror has been criticized. Jeffrey J. Swart and Daniel C. Norris, Practitioners Note *"Jury Selection: Whose Job Is It, Anyway?"* 23 Ga. St. U. L. Rev. 617 (2007).

*Walls* should not be read as imposing upon a trial court the duty and responsibility to independently question a member of the venire when counsel for both parties do not wish to question the person further. As we stated in *Kim v. Walls*, "the burden of proving partiality still rests with the party seeking to have the juror disqualified." Id. at 179. Thus, when a party rebuts the presumption of juror impartiality through the juror's admission that the juror's partiality would be affected by the juror's relationship with a party, attorney, or witness or the juror's extra-judicial knowledge of the case, and the trial court does not dismiss the juror for cause, that decision is not a manifest abuse of discretion so long as there is evidence brought out by questioning by the trial court or counsel that re-establishes the juror's impartiality without resort to talismanic questions cursorily asked after the inappropriate curtailment of counsel's voir dire examination of the juror. See *Pitts v. State*, 260 Ga. App. 553 (5) (b) (580 SE2d 618) (2003) (reliance on *Kim v. Walls* is misplaced when the case is not one in which the trial court curtailed the parties' voir dire of a prospective juror who had expressed well-founded doubts about being able to serve impartially due to a close relationship with a party or witness and trial court relied on its own insufficient rehabilitative questioning of the veniremember to qualify the juror). Inasmuch as the trial court was not required to make further inquiry of the juror after defense counsel "rested his case" for excusal for cause, the trial court did not err when it did not independently question the juror. To the extent *Valentine v. State*, supra, 265 Ga. App. 139, can be read as holding that a trial judge has an independent duty to question a veniremember, it is disapproved.

4. The State began its presentation of evidence by tendering certified copies of appellant's convictions for burglary, motor vehicle theft, making false statements to a police officer, and violation of the Georgia Controlled Substances Act. These convictions were set forth in the count of indictment charging appellant with being a felon in possession of a firearm, which was the predicate felony of the charge of felony murder. Appellant contends the trial court erred when, at the time the convictions were admitted into evidence, it failed to give limiting instructions to the jury concerning the use of the prior convictions. We need not address this claim since counsel did not request such a limiting instruction. *Anderson v. State*, 285 Ga. 496 (4) (678 SE2d 84) (2009).[7]

---

[7] We do note, however, that the trial court advised the jury in its charge at the close of evidence that appellant's status as a convicted felon was pertinent only with regard to the weapons charge and impeachment.

5. Contending her right to compulsory process was circumvented, appellant takes issue with the trial court's grant of the State's motion to quash subpoenas issued to the defense and served on three persons: a judge in the drug court run by the Superior Court of Pickens County, a pre-trial probation officer assigned to the drug court, and the drug-court coordinator. Appellant contends she was wrongfully required to establish the materiality of the testimony of her subpoenaed witnesses before they were permitted to testify. However, the right to compulsory process relates to the issuance of the process, not to the actual attendance of the witnesses. *Mafnas v. State*, 149 Ga. App. 286 (1) (254 SE2d 409) (1979), disapproved on other grounds in *Davenport v. State*, 289 Ga. 399, 402 (711 SE2d 699) (2011). Appellant's right to compulsory process was not abridged since the subpoenas were issued by the court and served on the witnesses who, in fact, appeared and whose testimony was proffered to the trial court outside the presence of the jury. After the subpoenas were issued and served, the trial court was statutorily authorized, upon written motion, to modify or quash "unreasonable or oppressive" subpoenas. OCGA § 24-10-22 (b) (1). It was only at this point that the inquiry turned to the expected content of the witnesses's testimony. The motion to quash the subpoenas averred, and defense counsel acknowledged, that the subpoenaed witnesses were to be called to impeach the testimony of the jailed prisoner who testified against appellant and who had failed the drug-court program in which the three subpoenaed witnesses worked. Appellant wished to inquire of the witnesses their impression of the veracity of the jailed prisoner, using the series of statutory questions set out in OCGA § 24-9-84 (4). The trial court quashed the subpoenas, ruling that the "drug-court community" was not one by which the standard for truthfulness was set and was not large enough to encompass the person's reputation. In implicitly ruling that the subpoenas that had been issued and served were unreasonable or oppressive, the trial court did not violate appellant's right to compulsory process.

6. The judge who presided over appellant's 2008 murder trial served as counsel for appellant in 1991 when appellant pled guilty to burglary charges in Fannin County, and his signature appeared as defense counsel on the certified copy of the 1991 indictment admitted into evidence in the 2008 trial.[8] A month before her murder trial, appellant signed a document in which she acknowledged having been

---

[8] The signature "R. Bradley, attorney for defendant," followed the handwritten notation that "Defendant Tammy Davis withdraws her plea of not guilty and pleads guilty this 8th day of August 1991" and the signature of "Tammy Davis defendant."

advised of the judge's prior representation of her and of her right to request another judge to preside over her trial. In the document, she stated her desire to have the judge continue to preside over her murder case. The document was signed by appellant and her trial counsel. Appellant now contends her express written waiver was insufficient, asserting that the trial court was required to question appellant about the waiver to ensure the waiver was knowing, intelligent, and voluntary. Such a judicial inquiry is necessary in order to ensure that the waiver of fundamental constitutional rights satisfies due process. See *Boykin v. Alabama*, 395 U. S. 238, 243, n. 5 (89 SC 1709, 23 LE2d 274) (1969) (constitutional rights to trial by jury, confrontation of accusers, and against compulsory self-incrimination). See also *Redd v. State*, 264 Ga. 399, 401 (444 SE2d 776) (1994) (effective assistance of counsel in dual representation situations). There is no evidence that the trial judge's former representation of appellant affected her right to effective assistance of counsel in defending the murder charges and, while a fair trial in a fair tribunal is a basic requirement of due process, the issue of judicial disqualification does not rise to the level of a constitutional issue in most matters, in light of Georgia's adoption of statutes and the Judicial Code of Conduct that provide more protection than due process requires. See *Mayor &c. of Savannah v. Batson-Cook Co.*, 291 Ga. 114, 115 (728 SE2d 189) (2012). Appellant's waiver of her ability to have the judge disqualified from presiding over her murder trial not being the waiver of a fundamental constitutional right, the trial court did not err when it did not conduct an on-the-record inquiry concerning whether the waiver was knowing, intelligent, and voluntary.

7. Appellant argues the trial court erred when it permitted the assistant district attorney to present new evidence during his closing argument when he attempted to demonstrate the difficulty of killing oneself with the rifle from which the bullet that killed the victim was fired. See *Williams v. State*, 254 Ga. 508 (3) (330 SE2d 353) (1985) (a prosecutor may not inject into the final argument matters which have not been proven in evidence). Appellant's failure to make this objection at trial precludes appellate review of the issue. *Sumlin v. State*, 283 Ga. 264 (2) (658 SE2d 596) (2008). See also *Perry v. State*, 274 Ga. 236 (3) (552 SE2d 798) (2001).

8. Appellant asserts she was the recipient of ineffective assistance of trial counsel.

> To prevail on [her] claim of ineffective assistance of trial counsel, appellant must show counsel's performance was deficient and that the deficient performance prejudiced [her]

to the point that a reasonable probability exists that, but for counsel's error, the outcome of the trial would have been different. A strong presumption exists that counsel's conduct falls within the broad range of professional conduct.

*Pruitt v. State*, 282 Ga. 30 (4) (644 SE2d 837) (2007). "A claim of ineffective assistance of counsel is judged by whether counsel rendered reasonably effective assistance, not by a standard of errorless counsel or by hindsight." *Hooks v. State*, 280 Ga. 164 (3) (626 SE2d 114) (2006).

Appellant contends trial counsel performed deficiently when he did not object to portions of the State's opening statement setting forth appellant's criminal history or to the introduction of certified copies of her convictions,[9] did not request a limiting instruction at the admission into evidence of certified copies of appellant's past convictions, and did not offer to stipulate to appellant's status as a convicted felon. Trial counsel's decision not to object to an opening statement that set forth admissible evidence, i.e., appellant's felony convictions as set forth in the indictment, was reasonable trial strategy that is not deficient performance. See *Phillips v. State*, 285 Ga. 213 (5) (a) (675 SE2d 1) (2009). The introduction of the certified copies was necessary to establish appellant's status as a convicted felon in order to prove the charge that appellant was a convicted felon in possession of a firearm. There is no deficient performance when an attorney fails to object to admissible evidence. *Woods v. State*, 271 Ga. 452 (2) (c) (519 SE2d 918) (1999). Assuming that the failure to ask for a limiting instruction on the use of appellant's prior criminal convictions was deficient performance, appellant did not suffer prejudicial harm from the deficiency since the trial court included such a charge in its instructions to the jury. The failure to offer to stipulate to appellant's status as a convicted felon in order to avoid having the jury's passions inflamed and risk the possibility of a conviction based on improper considerations (see *Ross v. State*, 279 Ga. 365 (2) (614 SE2d 31) (2005)) was not deficient performance since appellant's prior convictions were not likely to inflame the jury's passions to the point that the State's entitlement to choose the evidence needed to prove its case needed to be abrogated. See *Tanksley v. State*, 281 Ga. App. 61 (2) (635 SE2d 353) (2006) (burglary conviction not likely to inflame the jury).

Appellant also sees deficient performance in trial counsel's failure to object to the assistant district attorney's demonstration during

---

[9] Appellant's prior convictions were for burglary, theft by taking, making a false statement, and a violation of the Georgia Controlled Substances Act.

closing argument of the difficulty one would have in committing suicide by shooting oneself with a Remington rifle just above one's left eye. Inasmuch as the State has broad latitude to demonstrate and illustrate that which is authorized by the evidence (*Perry v. State*, supra, 274 Ga. 236 (3); see also *Bryant v. State*, 282 Ga. 631 (7) (651 SE2d 718) (2007)), we cannot say trial counsel performed deficiently when he did not object to the closing-argument demonstration that was authorized by the evidence.

Appellant contends trial counsel rendered ineffective assistance of counsel because he purportedly failed to investigate the case adequately. Appellant bases her assertion on the affidavit of a firearms expert presented at the hearing on appellant's motion for new trial. The expert's affidavit stated that a design defect in the Remington rifle model 552 allowed the rifle to fire without activating the trigger. Trial counsel testified that his two investigators, both familiar with firearms due to past law-enforcement and military experience, had examined the rifle and neither had found such a defect. On cross-examination, trial counsel acknowledged that the expert's affidavit did not state the date on which the design defect was discovered and that counsel had not heard of such a defect until informed by appellant's post-trial counsel in June 2011. Trial counsel also testified he was not aware of whether the Georgia Bureau of Investigation had reported any problems with the model of the Remington rifle at issue. Trial counsel's decision that his experts' examinations of the rifle were sufficient, even though they did not uncover the design defect reported by another expert after trial, does not constitute the failure to make a reasonable investigation that constitutes ineffective assistance of counsel.

> [S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

(Citations and punctuation omitted.) *Wiggins v. Smith*, 539 U. S. 510, 521-522 (II) (A) (123 SC 2527, 156 LE2d 471) (2003). See also *Martin v. Barrett*, 279 Ga. 593 (619 SE2d 656) (2005). Trial counsel's decision

to rely on his investigators' inspections of the rifle was not a dereliction of his duty to conduct a reasonable investigation since his decision was the result of reasoned strategic judgment and not the result of inattention. See *Wiggins v. Smith,* supra, 539 U. S. at 526 (II) (B) (1), 534 (II) (B) (3); *Terry v. Jenkins,* 280 Ga. 341 (2) (c) (627 SE2d 7) (2006).

Lastly, appellant contends trial counsel performed deficiently when, after stipulating to the admissibility of letters written by appellant during her pre-trial incarceration, he did not seek redaction of those portions of the letters that "intimated or suggested" that appellant had engaged in intimate relations with the recipient of the letters prior to the death of her husband. The State used the letters to establish a reason why appellant may have wanted her husband dead. Inasmuch as the intimations or suggestions contained in the letters written by appellant were admissible (*Thomas v. State,* 263 Ga. 85 (2) (428 SE2d 564) (1993)), trial counsel did not perform deficiently when he failed to seek redaction of portions of the letters.

9. Appellant contends her conviction and sentence for possession of a firearm by a convicted felon should be vacated because that crime served as the predicate felony for the felony murder charge for which she was convicted. See *Lawson v. State,* 280 Ga. 881 (3) (635 SE2d 134) (2006). However, in addition to having been found guilty of felony murder and being a convicted felon in possession of a firearm, appellant was also convicted of malice murder. The trial court sentenced appellant on the malice murder conviction and on the conviction for possession of a firearm by a convicted felon. The felony murder conviction was vacated by operation of law because, where there is only one murder victim, convicting and sentencing a defendant for both malice murder and felony murder of that victim improperly subjects the defendant to multiple convictions and punishments for one crime. See *Malcolm v. State,* 263 Ga. 369 (4)-(5) (434 SE2d 479) (1993). When, as in the case before us, the felony murder conviction is vacated, a trial court does not err when it imposes sentence on the jury's guilty verdict returned on the separately-charged felony that served as the predicate felony of the felony-murder charge. Id.

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 5, 2012.

*William L. Reilly,* for appellant.

*Joe W. Hendrick, Jr., District Attorney, Samuel S. Olens, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Elizabeth A. Harris, Assistant Attorney General*, for appellee.