S12A2083. JACKSON v. THE STATE.
(740 SE2d 609)

BENHAM, Justice.

Appellant Jamon Jackson was convicted and sentenced to life in prison plus 20 years for fatally shooting his girlfriend Ashley Cierra White and burning her body inside her vehicle to conceal her death.[1]

---

[1] The victim was killed on August 10, 2005. On October 21, 2005, the Fulton County grand jury returned a true bill of indictment charging appellant with malice murder, felony murder, arson in the first degree, aggravated assault with a deadly weapon, possession of a firearm during the commission of a felony, concealing the death of another, and tampering with evidence. A jury trial was held from March 10 to March 18, 2008, at the end of which the jury returned a verdict of guilty on all charges. On March 21, 2008, the trial court sentenced appellant to life in prison for malice murder, ten years to be served consecutively for arson in the first degree, five years to be served concurrently (with the count of arson in the first degree) for possession of a firearm during the commission of a felony, and ten years each for concealing the death of another and for tampering with evidence to be served concurrent to each other but consecutively to the malice murder charge. The aggravated assault charge merged as a matter of fact into the malice murder charge and the felony murder charge was vacated as a matter of law. On April 2, 2008, appellant moved for a new trial and filed amended motions for a new trial on April 6, 2011, and on May 20, 2011. The trial court conducted a hearing on the motion for new trial as amended on June 28, 2011, and denied the motion on October 4, 2011. The trial court

1. The record on appeal shows as follows. On Tuesday, August 9, 2005, appellant and the victim were driving around in the victim's silver Honda Civic. Sometime after 11:00 p.m., they picked up appellant's friend Darnell Amaker, and the three continued to ride around the Campbellton Road area. While near a stop sign, appellant and the victim started to argue. Amaker testified that the victim pushed the vehicle gear into park and then proceeded to slap appellant about the face with her open palm. Amaker saw appellant pull out a gun and then put it back down. The victim then pulled her cell phone from her purse and began to dial at which point Amaker said appellant grabbed the phone out of the victim's hand. The victim asked appellant whether he was going to shoot her. In response, appellant pulled out the gun and shot the victim in her face. After saying he "didn't mean to do it," appellant began driving again. Amaker said he observed that the victim's body was shaking when she was initially shot and that it stopped moving altogether at which point he presumed that she was dead. Appellant eventually pulled the car over, parked it on a street, and he and Amaker exited the vehicle. Amaker said he called Michael Grissom to have his brother Joseph Grissom to come pick them up. Joseph testified that appellant had called him requesting a ride as well. Joseph and his girlfriend both testified that they went to pick up Amaker and appellant and drove Amaker to where he was staying. Joseph and his girlfriend said they drove appellant back to the silver Honda where they observed appellant enter the vehicle and drive away. Neither Joseph nor his girlfriend said they saw a body inside the vehicle. They followed appellant but became separated. Joseph testified that as he was getting ready to turn around and go back home, appellant called him and asked him to wait. Joseph began driving away, but then saw appellant on foot and picked him up and took him home. Joseph said appellant was wearing a different shirt than when they picked him up and that he saw smoke emanating from the area from which appellant was walking. Bennie Grissom, who was the father of Michael and Joseph, testified at trial that appellant confessed to him that he had killed the victim.

On Friday, August 12, 2005, police discovered a burned out car with human remains in Fulton County. The authorities ran the vehicle's license plate number and discovered that the tag was registered to the victim. That evening, a policeman went to the

granted appellant's motion to file his appeal out-of-time on February 17, 2012, and appellant filed a timely notice of appeal on March 13, 2012. The appeal was docketed to the September 2012 term of this Court for a decision to be made on the briefs.

victim's grandmother's house which was the address associated with the license plate and was where the victim lived. At the time the officer arrived, the grandmother was getting ready to go down to the local precinct to file a missing person's report[2] because she had not seen the victim since Tuesday morning, the victim had not responded to telephone calls including calls from family and friends wishing her a happy birthday on that Wednesday, the victim had not gone to class on that Thursday, and the victim had not reported to work on Friday evening when her shift started. The victim's grandmother was able to identify photographs of a belt buckle, a ring, and a necklace recovered from the vehicle as items belonging to the victim. At trial, the parties stipulated that items of clothing from the victim tested positive for the presence of gasoline. The victim's mother testified that she flew in from Maryland in order to provide a DNA sample to help identify the remains that were found in the victim's car. A lab analyst from the Federal Bureau of Investigation testified that he conducted mito-chondrial DNA testing on a sample from the human remains found in the victim's vehicle and the sample from the victim's mother and concluded from that testing that the remains were that of the victim. The medical examiner testified that she observed projectile frag-ments in the soft tissue of the victim's brain which would be consis-tent with being shot in the face. The medical examiner stated in her expert opinion that the victim was deceased before her body was burned. Upon receiving the DNA test results from the FBI confirming the victim's identity, the medical examiner issued a death certificate which stated that the victim's cause of death was a "gunshot wound of the head."

The evidence adduced at trial and summarized above was suffi-cient to authorize a rational trier of fact to find appellant guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). While the evidence was sufficient to authorize appellant's conviction for tampering with evidence, appellant committed misdemeanor tampering rather than felony tampering because he tampered with evidence in his own case. *DeLeon v. State*, 289 Ga. 782 (1) (716 SE2d 173) (2011); *White v. State*, 287 Ga. 713 (1) (d) (699 SE2d 291) (2010). Accordingly, the ten-year sentence imposed on appellant for tamper-ing is vacated and the case is remanded for imposition of a sentence for misdemeanor tampering. Id.

---

[2] Lead detective Steven Dimasi testified that a missing person's report, pictures, posters, news releases, and sound bites were issued as the investigation was ongoing because there was a public interest in the case and the human remains in the vehicle had still not been conclusively identified.

2. Appellant contends the State failed to establish beyond a reasonable doubt Fulton County as the venue of the crimes for which appellant was tried and convicted. Venue is a jurisdictional fact that the State must prove beyond a reasonable doubt. *Lanham v. State*, 291 Ga. 625 (2) (732 SE2d 72) (2012). The Georgia Constitution provides that "all criminal cases shall be tried in the county wherein the crime was committed. . . ." (1983 Ga. Const., Art. VI, Sec. II, Par. VI), and OCGA § 17-2-2 (c) provides that

> [c]riminal homicide shall be considered as having been committed in the county in which the cause of death was inflicted. . . . If a dead body is discovered in this state and it cannot be readily determined in what county the cause of death was inflicted, it shall be considered that the cause of death was inflicted in the county in which the dead body was discovered.

Amaker, who witnessed the fatal shooting of the victim, did not know the location where appellant shot the victim; however, a College Park police officer testified that the burning car in which the victim's body was found was located in Fulton County. The State met its burden of proving beyond a reasonable doubt that venue properly was in Fulton County. *Lanham v. State*, supra, 291 Ga. at 626.

3. Appellant alleges the trial court erred when it allowed a videotape of appellant's non-custodial statement to be played to the jury.[3] On appeal, appellant argues that the videotape was irrelevant[4] inasmuch as it showed that when the lead detective Steven Dimasi left appellant alone in the interview room, appellant briefly opened the investigative file that Detective Dimasi had deliberately left behind. Appellant's arguments are unpersuasive. The trial transcript shows that before the videotape was played to the jury, Detective Dimasi testified on direct examination that he observed appellant from a place outside the interview room and that appellant briefly looked at the file folder Detective Dimasi left behind. Appellant made no objection to Detective Dimasi's testimony and, when the videotape was played to the jury, appellant made no contemporaneous objection as to the relevancy of any footage showing appellant touching the file. In fact, defense counsel made no mention of the

---

[3] The videotape is not in the appellate record. We have discerned the contents of the videotape from the trial transcript and the parties' briefs.

[4] On appeal, appellant does not challenge the trial court's denial of his motion to suppress the videotape on grounds related to *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

relevancy of any of the video footage until after the prosecutor had finished her initial direct examination of Detective Dimasi and then only when the prosecutor was raising a different issue with the trial court about the videotape. We note also that appellant extensively cross-examined Detective Dimasi about appellant's touching the file folder and Detective Dimasi's leaving appellant alone with the file as an investigative technique. Since appellant made no contemporaneous objection when the footage was played to the jury, this argument and purported allegation of error are not properly before this Court for review. See *Stolte v. Fagan*, 291 Ga. 477 (2) (b) (731 SE2d 653) (2012); *Culler v. State*, 277 Ga. 717 (6) (594 SE2d 631) (2004).

4. Appellant alleges the trial court erred when it denied his motion for mistrial when a portion of the videotape of appellant's non-custodial statement revealed to the jury appellant's prior criminal conduct. According to statements made by the trial court judge in the trial transcript, there was a brief mention made on the videotape of a "possible" prior drug arrest concerning appellant. At the mention of the drug arrest, the trial court immediately ordered the prosecutor to stop playing the videotape, sustained defense counsel's objection, and gave a curative instruction to the jury to disregard any mention of "any other criminal offense" by appellant. The trial court then denied appellant's motion for mistrial. Appellant contends the mishap improperly introduced evidence of appellant's character and constitutes reversible error. We disagree. The decision to grant a mistrial is within the discretion of the trial court and will not be disturbed on appeal unless there is a showing that a mistrial is essential to the preservation of the right to a fair trial. *Rafi v. State*, 289 Ga. 716 (4) (715 SE2d 113) (2011). Here, the trial court's immediate curative instruction and cessation of the playing of the videotape preserved appellant's right to a fair trial. See id. at 720; *Hammond v. State*, 260 Ga. 591 (3) (398 SE2d 168) (1990). Accordingly, appellant was not denied a fair trial, and the trial court did not abuse its discretion when it denied appellant's motion for a mistrial. Id.

5. Appellant alleges the trial court erred when it allowed the admission of purported inadmissible hearsay testimony over objection. This allegation is without merit. Detective Dimasi testified during his direct examination that Bennie Grissom told police during the investigation that appellant confessed to Bennie that he had killed the victim. Appellant contends Detective Dimasi's testimony constitutes inadmissible hearsay. This testimony, however, does not constitute inadmissible hearsay because Bennie testified in court under oath subject to cross-examination during which his veracity was challenged. *Woodard v. State*, 269 Ga. 317, 320 (496 SE2d 896)

(1998) ("a witness's veracity is placed in issue so as to permit the introduction of a prior consistent statement only if affirmative charges of recent fabrication, improper influence, or improper motive are raised during cross examination"), overruled on other grounds by *Bunn v. State*, 291 Ga. 183 (728 SE2d 569) (2012);[5] *Hayes v. State*, 268 Ga. 809 (4) (493 SE2d 169) (1997); *Cuzzort v. State*, 254 Ga. 745 (334 SE2d 661) (1985). Appellant also argues that Detective Dimasi's testimony constituted improper bolstering of Bennie Grissom's testimony. This bolstering argument, however, is not properly before the Court because appellant never made an objection to the testimony on the basis of improper bolstering. *Durham v. State*, 292 Ga. 239 (2) (734 SE2d 377) (2012).[6]

6. Appellant contends the trial court erred when it allowed, over appellant's objection, the State to question Detective Dimasi as to whether appellant was the only person to confess to the victim's death. This enumeration of error is without merit. The record shows that Bennie Grissom testified at trial that appellant confessed to him that he had killed the victim. During the course of Bennie's direct examination, the word "confession" was used pervasively to describe appellant's disclosure to Bennie without any objection by defense counsel. Later in the trial, the following transpired when Detective Dimasi testified:

- On redirect, the prosecutor asked Detective Dimasi how many people he had encountered who had confessed during his years of service as a police officer and defense counsel objected to the use of the word "confession" rather than the word "statement" and argued that Detective Dimasi had not received any confession. The prosecutor rephrased the question and asked, "When you spoke with Bennie Grissom, did Bennie Grissom indicate to you . . . that the Defendant confessed to him?" Detective Dimasi answered this question in the affirmative and appellant did not object.

- The trial court then allowed the prosecutor to ask the following question over appellant's hearsay objection: "In

---

[5] On cross-examination, defense counsel challenged Bennie Grissom's veracity inasmuch as her questions implied that Bennie had an improper motive for his testimony, namely diverting suspicion for the victim's death from his sons Michael and Joseph.

[6] Because this case was tried before the implementation of Georgia's new Evidence Code (effective for trials commencing on or after January 1, 2013), this Court is not required to conduct a plain error review of appellant's bolstering claim. Id.

this particular case did the defendant . . . confess to Bennie Grissom that he killed [the victim]" and Detective Dimasi responded in the affirmative.

· Finally, the trial court allowed the prosecutor on redirect to ask Detective Dimasi whether Amaker, Michael and Joseph Grissom, or anyone else involved in the investigation had confessed to killing the victim and Detective Dimasi responded in the negative. Defense counsel objected to this line of questioning by taking issue with the use of the word "confession" rather than the words "conclusion" or "statement."

On appeal, appellant urges that this entire line of questioning was hearsay and/or constituted improper bolstering of Bennie Grissom's testimony. Again, there was no hearsay violation because Bennie Grissom testified at trial. *Woodard v. State*, 269 Ga. at 320; *Hayes*, supra, 268 Ga. 809 (4); *Cuzzort*, supra, 254 Ga. 745. Appellant also failed to make any bolstering objection and so that issue is waived. *Durham*, supra, 292 Ga. 239 (2). Accordingly, this enumeration of error cannot be sustained.

*Judgment affirmed in part and vacated in part, and case remanded for resentencing. All the Justices concur.*

DECIDED MARCH 25, 2013.

*Dell Jackson*, for appellant.

*Paul L. Howard, Jr.*, District Attorney, *Christopher M. Quinn*, *Paige Reese Whitaker*, Assistant District Attorneys, *Samuel S. Olens*, Attorney General, *Paula K. Smith*, Senior Assistant Attorney General, *Katherine L. Iannuzzi*, Assistant Attorney General, for appellee.