FINAL COPY
294 Ga. 693

S13A1851.  THOMPSON v. THE STATE.

BENHAM, Justice.

Appellant Tony Lamar Thompson appeals his convictions for felony murder and related crimes regarding the death of Reynaldo Jackson.[1] The evidence in a light most favorable to the verdict shows that in the early morning hours of April 4, 2010, appellant, Jackson, and Noel Williams drove together in Jackson's truck to an apartment complex in DeKalb County for the purpose of buying drugs.  Williams exited the vehicle and was walking around it when she suddenly heard gunshots.  When she turned around, Williams saw appellant shooting into the truck from the passenger's side.  Appellant told Williams to help him move Jackson's body and help him wipe fingerprints from the vehicle,

---

[1] The crimes occurred on April 4, 2010.  On January 31, 2011, a DeKalb County grand jury indicted appellant on charges of malice murder, two counts of felony murder, aggravated assault, possession of a firearm during the commission of a felony, and possession of a firearm by a convicted felon.  Appellant was tried before a jury from January 31, 2011, to February 8, 2011, with the jury acquitting him of malice murder and finding him guilty on all remaining charges.  On February 18, 2011, the trial court sentenced appellant to life in prison for felony murder and five years to serve consecutively for possession of a firearm during the commission of a felony.  All remaining charges merged.  Appellant moved to file an appeal out-of-time on April 15, 2011, and the trial court granted the motion on April 20, 2011.  Appellant filed his motion for new trial on April 22, 2011.  The trial court held a motion for new trial hearing on May 21, 2013, and denied the motion on June 13, 2013.  Appellant filed a notice of appeal on June 25, 2013, and the case was docketed to the September 2013 term of this Court for a decision to be made on the briefs.

but Williams stood still in shock, and so appellant pushed Jackson's body back into the vehicle. Appellant then ran with Williams behind one of the apartment buildings. Appellant gave Williams his bloodied shirt and tried to give Williams the gun, but she refused to take it and so appellant hid the gun in a crawl space. Appellant told Williams to go to his brother's apartment and that he would meet her there. When Williams arrived at the brother's apartment, no one was home and so she called a friend who picked her up from a restaurant near the apartment complex where the shooting took place. While riding in the friend's car, Williams testified that she threw out appellant's bloody shirt on the side of the interstate. Later that morning, an apartment resident found the victim's body in the truck, and she called 911. Because the resident recognized the victim as appellant's associate, she also called appellant to tell him his "home boy" was dead. By this time, authorities had arrived and set up crime scene tape, keeping bystanders at a distance. The resident testified appellant came to the crime scene, but left after approximately ten minutes, saying he was going to church.

Upon returning home mid-morning on April 4, Williams testified she contacted the police in order to provide information about the victim's murder.

Detectives picked her up at her home and took her to the police station where she made a statement and identified appellant out of a photo lineup as the person who killed the victim. Williams then rode with police to show them where to find the murder weapon and the bloody shirt, both of which police were able to recover as evidence. Investigators also found three 9mm Luger Blazer shell casings near the passenger side of the victim's truck, recovered a bullet fragment from the interior of the victim's truck, and recovered two bullets from the victim's body. At trial, the ballistics expert testified that the shell casings and projectiles had all been fired from the gun, which was a 9mm Luger, recovered with Williams' assistance. DNA experts testified that the bloody shirt contained the victim's blood DNA, as well as trace amounts of appellant's DNA on the shirt's collar. Buttons found at the scene were consistent with the remaining buttons on the bloody shirt. A fingerprint analyst testified that appellant's fingerprints matched fingerprints found on the exterior passenger door of the victim's truck. The medical examiner testified the victim was shot four times and that two of the gunshots were fatal: a gunshot to the face and a gunshot to the chest which damaged the victim's lungs, heart and liver.

Taking the stand in his own defense, appellant testified he did not commit

the crime. He stated on the evening of April 3, the victim came by his apartment with Williams and another person. Appellant said the three people left after he gave the victim some of his clothes to wear to a club the three were going to that night. In the early morning hours of April 4, appellant stated Williams returned to his house and confessed to shooting the victim.

1. The evidence adduced at trial and summarized above was sufficient to authorize a rational trier of fact to find appellant guilty beyond a reasonable doubt of the crimes for which he was convicted. Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Appellant alleged counsel was ineffective for failing to object to a question propounded by the prosecutor in which he contends the prosecutor stated his opinion of appellant's guilt. In order to prevail on a claim of ineffective assistance of counsel, appellant

> must show counsel's performance was deficient and that the deficient performance prejudiced him to the point that a reasonable probability exists that, but for counsel's errors, the outcome of the trial would have been different. A strong presumption exists that counsel's conduct falls within the broad range of professional conduct.

(Citation and punctuation omitted.) Pruitt v. State, 282 Ga. 30, 34 (4) (644

4

SE2d 837) (2007). If a defendant fails to meet his burden on one prong of the two-prong test, then the other prong need not be reviewed by the Court. <u>Wright v. State</u>, 291 Ga. 869, 870 (2) (734 SE2d 876) (2012).

A witness who was Williams' friend and who also knew appellant testified that at about 7:00 a.m. on April 4, Williams called her and said she had witnessed a murder. The witness stated that sometime after her conversation with Williams, she had a conversation with appellant. In regard to that conversation, the prosecutor questioned the witness as follows:

Q. Did the defendant call you at all that day?
A. No. I don't really remember if he called me or I called him, one.
Q. Okay. So at some point you called him or he called you?
A. Yes.
Q. And do you have any idea when that was?
A. It was the next – no, it was that same day. It was later on like in the evening though like about 3:00 or 4:00.
Q. And at that point in time did you know that Tony was the one who had committed the murder?
A. No, I didn't.

It is at this point, appellant argues that trial counsel should have objected. At the motion for new trial hearing, trial counsel testified that she did not believe the prosecutor's question was objectionable because the witness had come to the

conclusion herself that appellant was involved in the incident.[2]  Pretermitting whether trial counsel was deficient for failing to object, an objection to the prosecutor's question as posed would not have changed the outcome of the case given the substantial evidence of appellant's guilt.  Accordingly, this enumeration of error is without merit.

3.  Appellant complains the prosecutor engaged in misconduct for the reasons stated in Division 2 of this opinion.  However, appellant waived appellate review of any challenge regarding the prosecutor's conduct because he failed to make a contemporaneous objection at trial.  Sanders v. State, 289 Ga. 655 (2) (715 SE2d 124) (2011).

4.  Appellant contends the trial court abused its discretion when it allowed two witnesses to testify about prior difficulties between the victim and appellant.  Specifically, the record shows that after a proffer was made by the State, the trial court allowed the jury to hear testimony from the victim's cousin and the cousin's girlfriend concerning prior difficulties between appellant and the victim.  The cousin testified that about a month and a half prior to the murder,

---

[2] The witness did go on to testify that during her conversation with appellant she became suspicious that he was involved with the shooting and that she hung up on him and refused to take any more of his phone calls.

6

the victim told him about a dispute appellant and the victim had over money from a check-cashing scheme in which they were both allegedly involved. The victim's cousin explained he was privy to the scheme and the dispute because he was considering joining the scheme at the victim's invitation. The cousin's girlfriend testified that two weeks prior to the murder, the victim told her he had a fist fight with appellant over money. Both witnesses also testified that appellant and the victim appeared to be on amicable terms in spite of the dispute.

Appellant alleges the trial court abused its discretion when it admitted this testimony because his Sixth Amendment right to confrontation was violated when the witnesses effectively testified on the deceased victim's behalf. Appellant's Sixth Amendment argument is solely focused on the trial court's finding that the proffered testimony had an indicia of trustworthiness, one of the prerequisites for applying the necessity exception to the rule excluding hearsay (see former OCGA § 24-3-1 (b)[3]). For a party to avail itself of the necessity exception, it must show that the declarant is unavailable, that the statement is relevant and probative of a material fact, and that the statement exhibits

---

[3] This Code section has been repealed and replaced by OCGA § 24-8-807, the residual exception to the hearsay rule. Ga. L. 2011, p. 99, § 2.

particular guarantees of trustworthiness. Johnson v. State, 294 Ga. 86 (2) (750 SE2d 347) (2013). Appellant does not challenge the first and second required showings, but only takes issue with the trustworthiness of the statements.

"Whether testimony was accompanied by particular guarantees of trustworthiness is a matter for the trial court's discretion." Belmar v. State, 279 Ga. 795 (2) (621 SE2d 441) (2005). We have held that a statement is trustworthy where there is a showing that the deceased enjoyed a close personal relationship to the person who is testifying as to the statement. See Davis v. State, 294 Ga. 486 (2) (__ SE2d __) (2014). Here, the trial court concluded the proffered testimony was reliable because it found the victim was like a brother to both the cousin and the cousin's girlfriend; it found this close relationship was underscored by the fact that the victim invited the cousin to participate in the check-cashing scheme; and it found the victim spent a significant amount of time with the cousin and the cousin's girlfriend, noting in particular that the three spent time together on the day before the victim's death. On this record, we cannot say the trial court abused its discretion in determining the trustworthiness of the statements. We note that any alleged harm from the admission of this testimony was mitigated by the fact that both witnesses

testified the victim and appellant continued to be friends in spite of their prior difficulties. The trial court did not err when it allowed these two witnesses to testify at trial.

5. Appellant contends the trial court erred when it did not grant appellant's motion for mistrial concerning certain testimony elicited by the prosecutor. The record shows the apartment resident who discovered the body knew appellant and the victim and she testified that when she called appellant to tell him his "home boy" was dead, appellant came to the scene while police were investigating and then left. The following colloquy transpired between the prosecution and the resident:

> Q. Okay. Now, after you said [appellant] was there and the detectives arrived, [appellant] didn't stick around and talk to the police, did he?
> A. No. . . .
> Q. And you stuck around and gave a statement to the police; is that right?
> A. [non-responsive answer]
> Q. Okay. Listen to my question[.] You stuck around and gave a statement to the police, didn't you?

At that point, appellant objected on the grounds the prosecutor was leading the witness, and the trial court sustained the objection. The prosecutor's

examination continued as follows:

> Q. Did you give a statement to the police?
> A. Yes. . . .
> Q. Okay. And *you*[4] gave that statement to the police on the scene; correct?
> A. Yes. . . .

At this point, appellant made an objection that the prosecutor's questioning constituted an improper comment on appellant's silence and moved for a mistrial. The trial court denied the motion for mistrial. The trial continued without the prosecution eliciting any further testimony regarding the issue.

Whether to grant a mistrial is a matter of the trial court's discretion. Jackson v. State, 292 Ga. 685 (4) (740 SE2d 609) (2013). The trial court's ruling on a motion for mistrial will not be disturbed unless there is a showing that "a mistrial is essential to the preservation of the right to a fair trial." Id. at 689. Here, the trial court's sustaining appellant's objection caused the prosecution to cease the questioning at issue, sufficiently preserving appellant's right to a fair trial. See id. Appellant has failed to show an abuse of the trial court's discretion.

---

[4] Appellant noted for the record that the prosecutor emphasized the word "you" when the question was posed.

6. Appellant alleges the trial court abused its discretion when it failed to strike a prospective juror for cause. In response to a general question posed to the entire venire, Juror 9 indicated she might have some issue with appellant's status as a previously convicted felon. When asked during her individual voir dire to explain, Juror 9 stated, "I think opportunities for rehabilitation in our society are slim. And I think history has a tendency to repeat itself." Juror 9 stated, however, that she could be objective and keep an open mind at trial. The following colloquy then transpired when appellant's counsel further questioned Juror 9:

> Q. Right now then you're saying that the fact that my client is a convicted felon, you would be able to not hold that against him in making a decision?
> A. I think I can.
> Q. And you're being truthful with us?
> A. I think I'm trying to be. I think so, yes.
> Q. Given your past of being a victim and your first answer to the question that the fact that he's a convicted felon, you couldn't be fair, and given that your answer was rehabilitation is slim and history tends to repeat itself, you still think that you wouldn't hold it against him? You're truthfully telling us that?
> A. I don't [sic] if I would use the phrase hold it against him. I think that given information or presented objective data, that I could use that and make a fair and honest decision.

The defense asked no further questions, and there is no indication in the

11

transcript excerpt provided that appellant ever moved the trial court to strike the juror for cause pursuant to OCGA § 15-12-164 (d), which requires the trial court to excuse for cause any juror it determines to be substantially impaired in her ability to be fair and impartial. Ultimately, appellant struck Juror 9 by using one of his peremptory strikes. Appellant argued at the motion for new trial hearing, and now argues on appeal, that Juror 9's reference to "objective data" indicated that the juror was biased and would need "extrinsic proof," or "statistics that rehabilitation does work," before she would change her "fixed" opinion and that the trial court should have dismissed the juror for cause sua sponte. At the motion for new trial hearing, the trial court indicated it did not agree with appellant's interpretation of the juror's testimony, it noted that the juror had stated she could be fair and impartial, and it denied appellant's motion for new trial.

An appellate court pays deference to the trial court's resolution of any equivocations or conflicts in a prospective juror's responses. Lewis v. State, 279 Ga. 756 (3) (a) (620 SE2d 778) (2005). The determination of a potential juror's impartiality is within the trial court's sound discretion, and the trial court will only be reversed on such matter upon finding a manifest abuse of

discretion.  See <u>Kim v. Walls</u>, 275 Ga. 177, 178 (563 SE2d 847) (2002).  See also <u>Poole v. State</u>, 291 Ga. 848 (3) (734 SE2d 1) (2012).  Upon our review of the transcript excerpt of the voir dire of Juror 9, we cannot say the trial court manifestly abused its discretion when it did not excuse this prospective juror for cause sua sponte.

<u>Judgment affirmed.  All the Justices concur, except Nahmias and Blackwell, JJ., who concur specially.</u>

NAHMIAS, Justice, concurring specially.

I concur fully in the majority opinion except for Division 6, which concludes that "we cannot say the trial court manifestly abused its discretion when it did not excuse this prospective juror for cause sua sponte."  I agree that the trial court did not abuse its discretion in not excusing Juror 9 for cause.  That would be true even if appellant had moved to excuse that juror for cause.  But the record does not show that appellant asked the trial court to excuse the juror, or that the court ruled on the issue during the trial.  In the absence of a contemporaneous objection and ruling at trial, this issue was not properly

preserved for appeal.  Accordingly, even if we proceed to address the issue on the merits as an alternative holding, it should first be deemed waived — as this Court and the Court of Appeals have done in similar situations many times before.  See, e.g., Passmore v. State, 274 Ga. 200, 201 (552 SE2d 816) (2001); Ashford v. State, 271 Ga. 148, 148 (518 SE2d 420) (1999); Sewell v. State, 302 Ga. App. 151, 154 (690 SE2d 634) (2010).

But instead of holding that the issue was waived for appeal, in a number of other cases this Court has resolved similar claims with a formulation like the one used in the majority opinion today, saying that the trial court did not err or abuse its discretion in failing to excuse a juror for cause "sua sponte."  Despite these repeated suggestions that trial courts have an obligation to excuse jurors for cause without any request from a party, as best I can tell, the Court has never explained the source of that duty, nor have we ever held that a trial court violated that duty.  Indeed, in concluding that the trial court did not err, the Court typically has not even indicated what the alleged basis was for excusing the juror in question, much less analyzed the merits of the issue.  See, e.g., Cade v. State, 289 Ga. 805, 807 (716 SE2d 196) (2011); Lewis v. State, 279 Ga. 756, 783-784 (620 SE2d 778) (2005); Lawler v. State, 276 Ga. 229, 235 (576 SE2d

2

841) (2003).

It appears that this "sua sponte" concept crept into our general criminal case law from its original use in death penalty cases, see Childs v. State, 257 Ga. 243, 249 (357 SE2d 48) (1987), where this Court may review issues not properly objected to at trial pursuant to our statutory duty to determine whether a death sentence has been imposed as the result of passion, prejudice, or any other arbitrary factor, see OCGA § 17-10-35 (c) (1); Hicks v. State, 256 Ga. 715, 730 (352 SE2d 762) (1987). It is also worth noting that in Poole v. State, 291 Ga. 848 (734 SE2d 1) (2012), a case cited in the majority opinion, we recently clarified that the trial court has no duty "to conduct sua sponte an examination of the challenged juror" or "to provide evidence on which to base its decision to retain or remove the juror," overruling a Court of Appeals' decision that had held otherwise. See id. at 852-854.

Before simply repeating the formulation used by the majority in deciding Division 6, we should justify its assertion that a trial court has a duty to excuse jurors for cause sua sponte in non-death penalty criminal cases — a duty that, if it exists, must be possible to violate, even though we have not once found that to have occurred. If there is no solid justification for imposing that obligation,

3

we should stop using the "sua sponte" language and instead apply the ordinary rule that an issue must be raised and ruled on at trial to preserve it for appellate review — the rule the majority opinion applies in Division 3. And if we decide, notwithstanding such waiver, to address the merits of the issue, we should do so as if the issue was properly presented, applying the usual abuse of discretion standard of review.

For these reasons, I would conclude that appellant waived review of his challenge to Juror 9, and in any event the trial court did not abuse its discretion in not excusing that juror for cause. I therefore agree with the result of Division 6 of the majority opinion, but I do not agree with all of its reasoning.

I am authorized to state that Justice Blackwell joins this special concurrence.

Decided March 3, 2014.

Murder. DeKalb Superior Court. Before Judge Coursey.

Dell Jackson, for appellant.

Robert D. James, Jr., District Attorney, Leonora Grant, Elizabeth A. Baker, Assistant District Attorneys, Samuel S. Olens, Attorney General, Patricia

B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Rochelle W. Gordon, Assistant Attorney General, for appellee.