In the Supreme Court of Georgia

Decided:   June 2, 2014

S14A0536.  SLAUGHTER v. THE STATE.

BENHAM, Justice.

Appellant Donna Slaughter appeals her convictions for the shooting death of Michael Haegle.[1]  For the reasons set forth below, we affirm.

1.  Appellant alleges the evidence was insufficient to convict her of the crimes for which she was charged.  The evidence in a light most favorable to the verdict shows that the victim's body was found on the side of a road in Macon County on May 7, 2010.  The words "fag," "KKK," and "hell" were written on

---

[1]The victim's body was discovered on May 7, 2010.  On April 25, 2011, a Marion County grand jury indicted appellant on charges of malice murder, felony murder (aggravated assault), concealing the death of another, felony tampering with evidence, and possession of a firearm during the commission of a crime.  Appellant was tried before a jury from October 29 to November 1, 2012, and the jury returned a verdict of guilty on all charges.  The trial court sentenced appellant to life in prison for malice murder, ten years for concealing a death to be served concurrently with the life sentence for malice murder, ten years for felony tampering with evidence to be served concurrently with the life sentence for malice murder, and five years for possession of a firearm during the commission of a crime to be served consecutively to the life sentence for malice murder.  The felony murder charge was vacated as a matter of law.  Appellant moved for a new trial on November 29, 2012, the trial court held a hearing on the motion on June 7, 2103, and denied the motion on September 13, 2013.  Appellant filed a timely notice of appeal on October 11, 2013.  The case was docketed to the January 2014 term of this Court and was submitted for a decision to be made on the briefs.

the victim's body, but the body otherwise contained no identifying information. Since the body was unidentified, the police released information to the media to acquire the public's assistance in identifying the body. A witness testified that he saw a small red pick-up truck in the vicinity of where the body was found and he reported this to police. On May 12, appellant and her husband Jason Slaughter contacted authorities and advised that the victim could be their roommate whom they said had been missing since May 1. Police went to appellant's home in Marion County. When police arrived, they saw a small red pick-up truck parked on the property. In their initial interview with police, appellant and her husband said the victim was a male prostitute and a homosexual who would often get rides to Columbus. The Slaughters consented to a search of the victim's room inside their home and police later obtained a search warrant to search the entire residence. In their search of the home, police found letters indicating a romantic relationship between the victim and appellant's husband, as well as two insurance policies–one in the victim's name and one in the husband's name, each naming the other as a beneficiary. The policy in the victim's name and listing the husband as the beneficiary was worth half a million dollars. Police arrested appellant's husband on May 13. Soon

2

after her husband's arrest, appellant confessed to the crime and, on May 17, she gave a videotaped statement to police wherein she reenacted the crime at her home.[2] This videotape was played at trial. Appellant told police that she retrieved a gun from her bedroom, loaded it with a single bullet, and shot the victim in the back of the head while he was sitting on the living room couch watching her husband play video games. She stated she pushed the victim's body onto the floor in front of the couch, placed him with her husband's assistance in a large plastic storage container, and hit the victim's hands, knees, elbows, ankles and back with a hammer in order to make it look as if the victim had been beaten. She also told police that she wrote the epithets on the victim's body in order to deflect attention away from herself and her husband.[3] She stated she cleaned up the blood on the floor in front of the couch with a rag and a bucket of water and bleach. Appellant and her husband waited until nightfall and then loaded the container with the body in it onto their small red pick-up truck and drove out to dispose of the body on the side of the road. She told

---

[2]Appellant does not contest the voluntariness of her inculpatory statements to police. The statements were made after appellant had been advised of and waived her rights under Miranda v. Arizona, 384 U.S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

[3]Appellant believed writing the slurs would deflect attention away from herself and her husband because they were an interracial couple.

police that she and her husband disposed of the gun, hammer, and plastic container in dumpsters that were ultimately taken to a landfill. Police attempted to search the landfill but could not find any of the items that were thrown away. A GBI forensic investigator testified that he found evidence that bleach had been used to clean up blood on the floor in front of the couch in the Slaughters' living room. At trial, the medical examiner confirmed that the bruises on the victim's body could have been caused by a hammer. He also testified that the cause of death was a "gunshot wound to the head with perforations of [the] skull and brain."

The evidence as described above was sufficient for a rational jury to find appellant guilty beyond a reasonable doubt of the crimes for which she was convicted. Jackson v. Virginia, 443 U.S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979).

2. Appellant complains the trial court erred when it failed to grant her motion for mistrial. "The decision to grant a mistrial is within the discretion of the trial court and will not be disturbed on appeal unless there is a showing that a mistrial is essential to the preservation of the right to a fair trial." Jackson v. State, 292 Ga. 685 (4) (740 SE2d 609) (2013). In this case, during the playback

4

of appellant's videotaped confession, the jury heard the GBI agent ask whether appellant had submitted to a polygraph test and appellant's affirmative response. The tape was stopped at that point and appellant moved for a mistrial. The trial court denied the motion but gave a curative instruction to the jury admonishing the jurors to disregard the reference to the polygraph test. Although appellant concedes that there was no mention of the results of the polygraph test, she argues she is nevertheless entitled to a new trial because the jury could infer the results of her polygraph test since the test was referenced during her videotaped confession. That is, that the jury likely inferred that she passed the polygraph test and that her statements during the videotaped confession were true. This Court, however, has held the fact that the jury is apprised that a polygraph test was taken is not necessarily prejudicial if no reference to the results of the test is made. Gulley v. State, 271 Ga. 337 (16) (519 SE2d 655) (1999). Appellant's efforts to distinguish Gulley from the instant case are unavailing. As in this case, the reference to the polygraph test in Gulley was made by the defendant while making a videotaped statement implicating himself in the crime and this Court determined that a mistrial was unwarranted because the reference was not prejudicial in the absence of any mention of the results of the test. Appellant has

5

failed to show that a mistrial was essential to her right to a fair trial, especially here where the trial court gave an immediate curative instruction admonishing the jury to disregard the reference to the polygraph test.   See <u>Durden v. State</u>, 274 Ga. 868 (5) (561 SE2d 91) (2002).  Accordingly, this enumeration of error cannot be sustained.

<u>Judgment affirmed.  All the Justices concur.</u>